1

1

2    UNITED STATES BANKRUPTCY COURT

3    EASTERN DISTRICT OF NEW YORK

4    Case No. 02-17966

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    BENJAMIN HIRSCH,

9

10            Debtor.

11

12    - - - - - - - - - - - - - - - - - - - -x

13

14                    United States Bankruptcy Court

15                    271 Cadman Plaza East

16                    Brooklyn, New York

17

18                    November 27, 2007

19                    10:00 AM

20

21    B E F O R E:

22    HON. DENNIS E. MILTON

23    U.S. BANKRUPTCY JUDGE

24

25

2

1  HEARING re Adjourned final application for compensation for

2  Stein Riso Mantel, LLP as debtor's counsel;  Fees: $223,690.75,

3  expenses $10,334.56.  Filed by Beth E. Spickler on behalf of

4  Stein Riso Mantel LLP.

5

6  HEARING re Adjourned application for compensation as special

7  litigation counsel for the debtors; Fees: $141,892.50.

8  Expenses: $521.39, filed by Joseph J. Haspel on behalf of

9  Joseph J. Haspel PLLC.

10

11 HEARING re Motion modifying the automatic stay to permit

12 Nachama Hirsch to present to the State Court a proposed final

13 judgment setting aside fraudulent transfers from the debtor to

14 the Hirsch Family Trust and declaring the HFT to be the

15 debtor's alter ego, permitting the Trustee to intervene in the

16 State Court action.

17

18 HEARING re Motion for an order pursuant to Rules 26(c) and

19 45(c) of the Federal Rules of Civil Procedure and to quash

20 subpoena.  Filed by Joseph J. Haspel on behalf of Benjamin

21 Hirsch.

22

23

24

25

3

1    HEARING re Motion for a protective order pursuant to Rule 26(c)

2    of the Federal Rules of Civil Procedure and to quash subpoena

3    pursuant to Rule 45(c) of the Federal Rules of Civil Procedure.

4    Filed by David Carlebach on behalf of Jack Mark Rubin,

5    Kensington Terrace Apartments.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Pnina Eilberg

4

A P P E A R A N C E S :

JOSEPH J. HASPEL, PLLC

      Attorney for Debtor

      40 Matthews Street

      Suite 201

      Goshen, NY 10924


BY:   JOSEPH J. HASPEL, ESQ.



FORCHELLI, CURTO, SCHWARTZ, MINEO, CARLINO & COHN LLP

      Attorneys for Ms. Hirsch

      330 Old Country Road

      Mineola, NY 11501


BY:   GARY M. KUSHNER, ESQ.

5

1    UNITED STATES DEPARTMENT OF JUSTICE

2    TAX DIVISION

3            P.O. Box 227

4            Ben Franklin Post Office

5            Washington, DC 20044

6

7    BY:    PETER SKLAREW, ESQ.

8            BONNIE PERLIN, ESQ.

9            (Telephonically)

10

11

12    ROSENBERG MUSSO & WEINER LLP

13            Attorneys for Robert Musso, Chapter 7 Trustee

14            26 Court Street

15            Brooklyn, NY 11242

16

17    BY:    BRUCE WEINER, ESQ.

18            ROBERT J. MUSSO, ESQ.

19

20

21

22

23

24

25

6

1  UNITED STATES DEPARTMENT OF JUSTICE

2  OFFICE OF THE UNITED STATES TRUSTEE

3       271 Cadman Plaza East

4       Brooklyn, NY 11201

5

6  BY:   BRIAN J. HUFNAGEL, ESQ.

7

8

9  STEIN RISO MANTEL LLP

10      405 Lexington Avenue

11      New York, NY 10174

12

13 BY:   GERARD A. RISO, ESQ.

14       BETH E. SPICKLER, ESQ.

15

16

17

18 LAW OFFICES OF DAVID CARLEBACH

19      Attorney for Kensington Terrace Associates, LLC

20      40 Exchange Place

21      New York, NY 10005

22

23 BY:   DAVID CARLEBACH, ESQ.

24

25

7

1    PAUL KROHN

2         Attorney for Douglas Rosen

3         40 Clinton Street

4         Suite 1G

5         Brooklyn, NY 11201

6

7    BY:   PAUL KROHN, ESQ.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

8

1                         P R O C E E D I N G S

2               THE COURT:  Good morning.  Could I have your

3      appearances beginning with Mr. Carlebach.

4               MR. CARLEBACH:  David Carlebach representing

5      Kensington Terrace Associates, LLC and Jack Mark Rubin.

6               MR. HASPEL:  Joseph Haspel, special litigation

7      counsel in the Chapter 11 and on the fees pro se and for the

8      debtor in the post-conversion matters.

9               MR. RISO:  Gerard Riso, Stein Riso Mantel.

10              MS. SPICKLER:  And Beth Spickler, Stein Riso and

11     Mantel appearing on behalf of our fee application.

12              MR. WEINER:  Bruce Weiner, Rosenberg Musso Weiner for

13     Robert Musso, Chapter 7 Trustee.

14              MR. MUSSO:  Robert Musso, Chapter 7 Trustee.

15              MR. KUSHNER:  Gary Kushner of Fochelli Curto for

16     Ms. Hirsch in the adversary proceeding.

17              MR. HUFNAGEL:  Brian Hufnagel for the United States

18     Trustee.

19              MR. KROHN:  Paul Krohn for Douglas Rosen.

20              MS. PERLIN:  And Bonnie Perlin (ph.) for the United

21     States. And I also have my supervisor, Peter Sklarew with me on

22     the phone.

23              THE COURT:  Good morning.

24              MR. SKLAREW:  Good morning, Your Honor.

25              THE REPORTER:  (Indiscernible).

1          THE COURT:  Ms. Perlin, can you hear our reporter?

2          MR. SKLAREW:  The reporter?

3          THE COURT:  The reporter just asked Ms. Perlin -- our

4    Court Reporter just asked Ms. Perlin a question.

5          MS. PERLIN:  No, then, I did not.

6          THE REPORTER:  (Indiscernible).

7          THE COURT:  Try again.

8          THE REPORTER:  Ms. Perlin, can you hear me?

9          MS. PERLIN:  Now I can, yes.

10          THE REPORTER:  Is Mr. Sklarew going to make an

11    appearance?

12          MR. SKLAREW:  Yes, it's Peter Sklarew, S-K-L-A-R-E-W,

13    same address as Ms. Perlin.

14          THE REPORTER:  Thank you.

15          THE COURT:  I'll start with the fee applications.

16          MS. SPICKLER:  My fee application first, Your Honor?

17          THE COURT:  Yes.

18          MS. SPICKLER:  Okay.  I don't know whether you want

19    me to go back to the original fee application, Your Honor.

20    We're here today with regard to a proposed settlement that had

21    been reached with the IRS and with Mr. Haspel and my firm.  And

22    you had provided sufficient time for all of the parties to put

23    in responses with regard to that settlement.

24          THE COURT:  I really wanted to have this argument

25    addressed to -- to that issue alone.

10

1          MS. SPICKLER:  That issue alone.

2          THE COURT:  To the proposed settlement and the

3  parties' responses to it.

4          MS. SPICKLER:  The proposed settlement, Your Honor,

5  was that Mr. Haspel and my firm reduce our fees to 180,000

6  dollars which we would then share pro rate between us.  So Your

7  Honor, I'm here in preparation.

8          THE COURT:  That's fine.

9          MS. SPICKLER:  Mr. Haspel and my firm are in

10  agreement with that settlement.  The U.S. Trustee and the

11  Chapter 7 Trustee have raised objections that payment of that

12  fee -- an award of fee, first, would act as collateral

13  estopple, perhaps, in some future action against our firms for

14  some purported malpractice in connection with the Chapter 11

15  case, that's number one.  And number two, that any fee award

16  should be held in abeyance and not paid to us until some time

17  in the future when whatever actions they plan to bring have

18  been resolved and a determination can be made as to whether or

19  not there's a setoff.

20          My position on that is that those -- at additional

21  terms which were not part of the settlement and which we would

22  not agree to, we feel that any collateral estopple issue is not

23  for this Court to determine but in some future action.  And

24  we've waited five years to be paid, at this point we would want

25  the Court to rule, one way or the other, on our fee application

11

1    and let the chips fall where they may.

2          THE COURT:  And if the Court were to rule that you

3    were to be paid -- grant your application in full, where would

4    the payment come from?

5          MS. SPICKLER:  From money that the Chapter 7 Trustee

6    is holding from the sale of the debtor's assets.

7          THE COURT:  Anything else?

8          MS. SPICKLER:  No, Your Honor.  My --

9          THE COURT:  I'm relying on the papers that have been

10   submitted and I don't want to, you know, have counsel feel that

11   their argument is short-changed in any way.  But given -- you

12   know, given the sheer weight of the papers that are before the

13   Court, I'm just trying to avoid a repeating of -- of either

14   argument that have already been made in person or in writing.

15         MS. SPICKLER:  I understand, Your Honor.

16         THE COURT:  And so I -- you know, if counsel, any

17   counsel, feels a need to say anything more just let me know.

18   I'm not trying to, you know, to limit the comments of counsel.

19   I think we have -- have heard much of the arguments before and

20   so I'm really just considering, today, more or less a re-

21   hearing for more or less reply purposes only.

22         MS. SPICKLER:  No, Your Honor.  I would only ask that

23   you rule on the merits at this time.

24         THE COURT:  Okay.  Mr. Haspel?

25         MR. HASPEL:  I have nothing to add.

12

1              THE COURT:  Okay.  Mr. Hufnagel?

2              MR. HUFNAGEL:  Brian Hufnagel for the

3    United States Trustee.  Your Honor, the United States Trustee

4    consented to the settlement as it was laid out with those

5    additional terms that the firms have not agreed to.  So at this

6    point there is no settlement.  The reason why we had additional

7    briefing and additional papers was so that the

8    United States Trustee and the Chapter 7 Trustee could state for

9    the Court what terms we would be willing to agree to for

10   purposes of having the fee settled at the dollar figure that

11   was negotiated by the Internal Revenue Service.

12              Term 3 of the settlement agreement, as it was

13   submitted to the Court and is attached as Exhibit A to the

14   United States Trustee's papers, states that this does not

15   settle or have any effect on other issues, claims, proceedings,

16   etcetera.  I guess I'm reading backwards but Term 2 allows the

17   U.S. Trustee to state the additional conditions that they wish

18   to add to the settlement, which we did and which the firms have

19   not agreed to.  I don't think it's necessarily material whether

20   they have agreed or we have not agreed to the settlement but

21   certainly there is no settlement.  And at this point, it would

22   be deciding the fees on the merits.  And certainly we welcome

23   additional argument on that or additional papers if Your Honor

24   likes.  The record is pretty complete as well.

25              THE COURT:  Thank you, Mr. Hufnagel.

13

1          MR. HUFNAGEL:  Thank you, Your Honor.

2          THE COURT:  Mr. Weiner.

3          MR. WEINER:  Good morning, Your Honor.  I don't -- I

4    don't want to repeat everything that's in the papers but I do

5    want to respond to a few of the things that were in the

6    response papers.  And most particularly the -- the statement in

7    there that -- that the attorneys for the debtor in this

8    Chapter 11 proceeding were not fiduciaries to this bankruptcy

9    estate.  I looked at that and I did some research and that's

10   a -- there are -- while there are some cases that do say that,

11   under facts different from this case, it's a distinctly

12   minority viewpoint and the majority viewpoint is that a counsel

13   to a debtor in possession is a fiduciary to the estate and

14   cannot do things and take positions that are -- are harmful to

15   the estate.  Just two cases that the trustee found, one is in

16   re Count Liberty LLC --

17          THE COURT:  Mr. Weiner -- Mr. Weiner, you can have

18   them before you; you can't put them in writing?

19          MR. WEINER:  Well, Your Honor, I only got their

20   papers a few days ago, on the eve of the Thanksgiving holiday.

21   They had agreed -- they had asked for an extension of time and

22   I gave it to them.

23          THE COURT:  You could have asked for an extension of

24   time for today.  You come to the podium with case names and

25   citations and it makes any type of preliminary review just

14

1  totally impossible, totally impossible.  Give me those names

2  and cases.

3          MR. WEINER:  Count Liberty LLC found at 370 B.R. 259

4  and JLM, Inc., found at 210 B.R. 19.  The allotted decision

5  being a Second Circuit opinion.

6          THE COURT:  All right.

7          MR. WEINER:  And just to add on that is that I don't

8  think the interests of the Hirsch estate were well served by

9  this counsel on this case.  That the Hirsch estate has been

10 harmed by the things that have gone on in this case.  That

11 there are millions of dollars of property that could have --

12 could and should have been recovered had there been independent

13 counsel in this proceeding.  And while -- and it is far from

14 clear whether the trustee is going to be able to do anything

15 about -- about that.  We do not want to see any decision today

16 that would preclude the trustee from going after counsel should

17 that become necessary.

18          THE COURT:  Thank you, Mr. Weiner.  Mr. Krohn, do you

19 have anything to add at this time?

20          MR. KROHN:  No, Your Honor.

21          THE COURT:  Mr. Kushner?

22          MR. KUSHNER:  No, Your Honor.

23          THE COURT:  Thank you.  Ms. Perlin?

24          MS. PERLIN:  Yes, Your Honor.  To begin with, we do

25 not believe that there is any breach of the settlement

15

1    agreement.  As attached to our response to the settlement

2    offer, Government Exhibit A, as the attorney for the U.S.

3    Trustee's office also wrote in, number 3 -- edition number 3

4    simply says that this does not settle or have any effect on

5    other issues, claims, proceedings, etcetera.  And an argument

6    that any malpractice action is waived would affect other

7    issues, claims or proceedings.

8              THE COURT:  Well is it -- I mean, are you taking both

9    sides of the issue then?  I mean, are you saying on the one

10   hand this -- this -- the agreement that was proposed that it's

11   specific language provides that it does not settle or have any

12   effect on other issues will not, therefore, preclude subsequent

13   litigation and then, on the other side saying  you're taking

14   the position of the Chapter 7 Trustee that it might?

15             MS. PERLIN:  I'm sorry, Your Honor, I'm not sure if

16   I'm understanding you question.

17             MR. SKLAREW:  I think I am, Your Honor, do you mind

18   if I answer?

19             THE COURT:  Yes, you may answer.  I'm not

20   understanding the statement of the United States.

21             MR. SKLAREW:  This is Peter Sklarew.  I think what

22   may have confused the court is Ms. Perlin's statement that

23   there was no breach.  That was not meant as saying there is a

24   settlement.  It was simply -- there's an allegation that --

25   that by what we filed saying there is no settlement, we've now

16

1   breached it.  We agree with the trustee and the U.S. Trustee

2   that a material term of this settlement was that the opposing

3   counsel or the applicants that is, had to accept the agreement

4   as written which says it will not have any effect on any other

5   claim.  One such claim is a potential malpractice claim.  If

6   they're now going to take the position that it could have such

7   an effect through claim preclusion, then they're not agreeing

8   to the settlement.

9        THE COURT:  They're not taking that position.  As I

10  understand it, that's the position of the Chapter 7 Trustee.

11  The Chapter 7 Trustee is saying if -- if there is an agreement

12  on payment of fees and the -- and the order is issued, payment

13  is made now or payment is directed now to be made later that

14  they could well collaterally estop the trustee from pursuing

15  certain claims.

16       MR. SKLAREW:  Well it could under the law unless they

17  agree that it won't.  Unless that's -- so a material term is an

18  agreement -- is that they are agreeing it won't.  Their papers,

19  after this e-mail was sent, which were filed more recently

20  explicitly state that they will not agree to waive the argument

21  that there is claim preclusion.  They are clearly reserving the

22  right to have you approve this settlement, award the fees and

23  then if the trustee sues them on malpractice say oh, that

24  settlement ended it you can't make that claim.  As long as

25  they're making that allegation there is no settlement.  They

17

1    have to affirmatively agree that they can't do that.  If they

2    don't then there is an effect on other claims.

3              THE COURT:  As I've understood the argument today,

4    counsel for both Ms. Spickler and Mr. Haspel by -- by his

5    statement that he had nothing to add, are taking the position

6    there is no agreement that has been reached pursuant to this

7    settlement proposal.

8              MR. SKLAREW:  I think that's correct.  And I think

9    there is no agreement -- I think all sides agree there's no

10   agreement in that sense.

11             THE COURT:  Uh-huh.

12             MR. SKLAREW:  I thought I also heard Ms. Spickler say

13   that she thought you could approve the fees or at least I

14   certainly read Mr. Haspel's papers to say that you could --

15   that there is a settlement.  If they're now agreeing that --

16   that because they won't agree with that condition and there is

17   no settlement and you should simply approve their application

18   in full, then I think the only thing -- then -- we certainly

19   agree with the trustee that it should be put over so that there

20   isn't a potential collateral estopple effect and that you

21   should instead address the stay lift issue that's before you

22   today first.  See what happened, see if there is a fraudulent

23   conveyance set aside eventually, because all of that could moot

24   the malpractice claims eventually.  And instead of first

25   deciding the fee application, at this point, which there's no

18

1  rush to because we're in a case that's now in the 7 and we're

2  not at the end of the case.  So the fee applications don't have

3  to be decided right now, particularly if they can be affected

4  by other proceedings.

5            THE COURT:  I understand.

6            MR. SKLAREW:  So we would agree with the trustee that

7  the proper thing to do if there's no settlement is to put off

8  the fee applications.

9            THE COURT:  I understand the government's position,

10  Mr. Sklarew.

11            MR. SKLAREW:  Thank you.

12            THE COURT:  Ms. Spickler, I will give you until a

13  week from today to put in any response to the two cases cited

14  by Mr. Weiner in his oral argument today.  And otherwise, I

15  will reserve decision on -- on this fee application.  And I

16  will -- I will await either a letter stating we have no

17  submission or this is our submission.  And I will decide the

18  application without any further hearing.

19            MS. SPICKLER:  Thank you, Your Honor.

20            MR. SKLAREW:  Your Honor?

21            THE COURT:  Yes.

22            MR. SKLAREW:  This is Peter Sklarew again.  We also

23  received the papers shortly before the Thanksgiving holiday.

24  And there's a lot of things in the papers that go well beyond

25  things that we argued before and that we disagree with.  And so

19

1    we'd also like the opportunity to file a short reply.

2              THE COURT:  You may have that opportunity.

3              MR. SKLAREW:  And when was the date again?

4              THE COURT:  A week from today.

5              MR. SKLAREW:  Thank you, Your Honor.

6              MR. HASPEL:  Your Honor, I'm not -- I'm going to try

7    to work with Ms. Spickler and make it a single reply.  But if

8    we have a disagreement I may send out something, I doubt if we

9    do.

10             THE COURT:  So understood.  Calendar number 3 is the

11   motion for relief from stay.

12             MR. WEINER:  This is the motion of the

13   Chapter 7 Trustee seeking relief from the stay to allow entry

14   of a State Court judgment in this case, a judgment that was --

15             THE COURT:  You'll have to forgive me, Mr. Weiner.

16   This is only about the sixth time that I've -- that I've heard

17   this application.

18             MR. WEINER:  Yes, Your Honor.

19             THE COURT:  An application which the Court invited

20   when counsel for Ms. Hirsch stated that all they simply wanted

21   to do was to go back to State Court to enter a judgment

22   granting the divorce.  And so now, this application is before

23   me for the sixth time.  Tell me why I should grant it this

24   time.

25             MR. WEINER:  Well, because there was -- there were

20

1  arguments in the District Court and the District Court judge, I

2  understand, was basically --

3          THE COURT:  Were you there?

4          MR. WEINER:  Mr. Musso was there.

5          THE COURT:  Okay.

6          MR. WEINER:  Basically invited this application and

7  said that this particular application had never -- in this --

8  styled in this particular way had not actually been made and

9  the District Court wanted to see what would happen with this

10 particular occasion.  So, that is the reason why we brought --

11 the trustee is not trying to bring matters before this Court

12 that this Court has already heard or -- or resolved.  But I

13 must say additionally, this is the first time that there's

14 somebody actually representing the Hirsch estate that is asking

15 for these -- for these matters as opposed to an individual --

16 an individual creditor.  And the trustee does come here today

17 as a representative of all of the particular creditors, despite

18 statements and opposing papers.  The trustee is not coming here

19 on behalf of Ms. Hirsch or on behalf of the IRS.  There are

20 numerous other creditors in this case that the trustee believes

21 have been -- are entitled to compensation, have been harmed by

22 the -- by what has gone on in this case that the Hirsch estate

23 was -- was not adequate -- was not a party to this confirmation

24 hearing in which it is alleged that 136,000 dollars undid

25 conveyances that the trustee calculates are worth a minimum of

21

1    a million dollars and perhaps as much as three or four million

2    dollars.  The mathematics as set forth in the papers that were

3    filed is flawed.  Just for one example, the trustee has five

4    fraudulent conveyance actions and three of them would result in

5    recovery and two of them would not.  The trustee doesn't then

6    add up the five and subtract the two negative ones from the

7    three positive ones.  The trustee abandons the two negative

8    ones and pursues the three positive ones and recovers a certain

9    dollar amount for the estate.  So that, in and of itself, is a

10   flawed math.

11        The second thing is that there was never -- there are

12   statements in the responsive papers that the money that was

13   recovered on the Chatsworth mortgage was not found by the State

14   Court to be a fraudulent conveyance.  And I reread that

15   decision several times and I think that that statement is just

16   flat out wrong.

17        The State Court judge discussed the recovery --

18   discussed the issue of the Chatsworth mortgage payment in the

19   same section where she discussed all of the properties.  And

20   immediately after that followed it by her conclusion and her --

21   that all of the conveyances are hereby undone, pursuant to

22   New York Debtor and Creditor Law.  She found the -- made the

23   statements of the debtor after testimony to be -- to be not

24   credible and that the money was -- belonged to and was paid to

25   the debtor and then was thereby transferred by him to the trust

22

1   that he had -- he had set up.  And the analysis contained in --

2   at the time of the confirmation hearings and the corporate

3   cases does not contain any analysis of that recovery and it is

4   left out again from the responsive papers.  And that recovery

5   would not be against the entity debtors.  That recovery of that

6   mortgage had nothing to do with the entity debtors but instead

7   would be directly from -- from the family trust which was not a

8   party to any of the proceedings in this court and, in fact, is

9   not -- not before the Court then and not before the Court now.

10  And the trustee wants to be able to pursue these conveyances.

11  They were already found to be fraudulent by the State Court.

12  If the stay is vacated and the trustee intervenes in that

13  action there would be no need to commence a separate action for

14  that with all of the possibilities that is now precluded by the

15  limitations of section 546 because such action had already been

16  commenced by a creditor in this case, Ms. Hirsch, pre-petition.

17  And proper findings have been -- have been made.  If those

18  findings were wrong, well there is an appellate process in the

19  State Court that the other side says that they wish to -- wish

20  to pursue but it shouldn't -- that shouldn't be pursued in the

21  context of arguing here in this court.  Let the stay be

22  vacated, let the judgment be entered, dealing with all of these

23  conveyances, and then -- and then if there are appeals or

24  motions for re-argument in the State Court, let the State Court

25  handle it.  It's the State Court's decision.

23

1          Further, the values of the properties as set forth,

2     both at the time of the confirmation hearing and in the -- and

3     in the papers are grossly undervalued.  The Coney Island

4     properties, a mortgage was put on in just July of last year on

5     that property for three and a half million dollars.  The city

6     currently values the property on East 7th Street at over a

7     million dollars and the property on East 27th Street at

8     approximately a million dollars.  The trustee's sale of the

9     debtor's residence shows that the market value -- the sale of

10    that property came in at a price much higher then the debtor

11    had been saying all along was the value of that -- that

12    property.  So that there is significant equity in these

13    properties that potentially could be recovered for the benefit

14    of all of the creditors of this estate.  Not just Ms. Hirsch,

15    not just the IRS but all of the -- all of the creditors of this

16    estate.

17          And it is for this reason that the trustee brought

18    this motion and wishes to pursue this.  And it seemed that

19    since these findings and this proceeding had already been done

20    in the State Court, let the matter go back to the State Court.

21    Let the trustee intervene on behalf of all of the creditors of

22    this estate and -- and let the State Court judge enter -- enter

23    her judgment.  Let them make a motion for your argument, let

24    them take an appeal and let those issues be resolved, rather

25    than having to come back into this court and commence new

VERITEXT/NEW YORK REPORTING COMPANY

212-267-6868                                              516-608-2400
Case 1-02-17966-dem    Doc 484    Filed 12/07/07    Entered 12/10/07 17:35:46    Desc
Main Document      Page 23 of 49

24

1    proceedings, which -- which may run into some limitation

2    problems.

3            And additionally, there were findings made in the

4    State Court that the family trust is the alter ego of the

5    debtor.  Those actions have never been pursued or litigated in

6    this court.  Those actions, again, are against the trust not

7    against the entity debtors.  I don't think that that -- that

8    finding or that action is affected by the confirmation hearing.

9    And the trustee wants the right to pursue that action because

10   if -- if that finding, made by Justice Hansey in the State

11   Court, is upheld that indeed the trust is the alter ego of the

12   debtor, the trust is the owner of properties, very valuable

13   properties with significant equity in them, even with this

14   three and a half million dollar mortgage.  And the trustee want

15   to try to recover that -- that money.  Of course if it turns

16   out that the three and a half million dollar mortgage has eaten

17   up all of the equity of the property, then the trustee may --

18   may pursue counsel for that recovery for not bringing this

19   action and allowing that to happen.  But that's a separate --

20   that is a separate issue that we don't know yet down the line

21   which is one of the reasons why the trustee supported the

22   position of the government for not deciding the fee

23   applications today or certainly not putting any preclusive

24   effect on them but I don't mean to go back to the other -- the

25   other actions.  So it's for all of these reasons that the

VERITEXT/NEW YORK REPORTING COMPANY

212-267-6868                                    516-608-2400
Case 1-02-17966-dem    Doc 484    Filed 12/07/07    Entered 12/10/07 17:35:46    Desc
Main Document    Page 24 of 49

25

1    trustee brought this motion and was not trying to do something

2    that had been done before or in any way get the Court involved

3    in revisiting prior proceedings.  Thank you.

4        THE COURT:  Thank you, Mr. Weiner.

5        UNIDENTIFIED ATTORNEY:  I'm just going to start with

6    where they started.  Judge Hyman did not invite this.  What

7    happened, I was there Mr. Weiner was not --

8        THE COURT:   Just want to say that whether

9    Judge Amon invited the application or not, the application has

10   been made.  The application will be decided by this Court.  And

11   if Judge Amon made a suggestion to the parties or a statement

12   that the parties or a party interpreted as a suggestion that a

13   motion be made, all well and good.  The motion has been made.

14        MR. HASPEL:  Fair enough.  This is the sixth

15   revisiting of this motion.  From the beginning of this case

16   we've been on -- and when I say this case I say the collective

17   cases -- we've been on a course of conduct with everybody's

18   eyes always on that State Court decision at the trial, which

19   was never reduced to a writing.  As a result there is really no

20   preclusive effect of that decision.  And moreover, during the

21   pendency of this case, with the Supreme Court's decision in the

22   ExxonMobil case, there is no reason why this Court can't look

23   behind that case.  Rucker Feldman has been, effectively,

24   limited.

25        Be that as it may, our position is not that the

26

1    trustee should not do the duties of the trustee.  The trustee

2    should do the duties in this court.  This court, throughout

3    these proceedings, as I indicated, has always had its eyes to

4    what happened in the State Court.  And this Court nobody --

5    nobody has ever shied away from the fact that the State Court

6    decision after trial was one of the impetuses of the filing of

7    this case.  And as was stated, since the first telephone call

8    on the second day after the filing, Mr. Kushner filed his order

9    to show cause, raised all these issues and the focus from the

10   second day onward was on the matrimonial proceeding.

11           Through the cases and through the confirmation

12   process of the entity debtors, there were issues that were

13   raised over and over again how this Court should not take

14   into -- should not rely upon the numbers set forth in the

15   decision after trial.  This Court made it eminently clear that

16   it did not seek to relitigate the matrimonial case within this

17   case and that it would look to the decision after trial for

18   guidance and we proceeded under that mode ever since with that

19   direction coming from the Court, coming from the creditors,

20   coming from everybody is when we, in fact presented the -- the

21   -- the plan and disclosure statement of the entity debtors.

22   And although we have taken a position, or I have taken a

23   position since day one as special litigation counsel who is the

24   person who is there to protect -- to give the debtor -- to not

25   disenfranchise the debtor.  The debtor, since day one, through

27

1   me has said there is no fraudulent conveyance.  It's all easily

2   unwound through counsel, primarily bankruptcy counsel, with my

3   assistance we convinced the debtor that that should be unwound.

4   And when I hear in the other case, the fee application case,

5   that we breached fiduciary duty, it's hard to believe when I

6   hear that because we -- we looked to the decision, the guide of

7   this case, and we had the numbers.  This Court crunched the

8   numbers, we crunched the numbers, Mr. Kushner crunched the

9   numbers, the U.S. Trustee crunched the numbers.  And we came up

10  -- Your Honor came up with a decision of what would be

11  necessary to unwind that fraudulent conveyance and it was done.

12  And this Court, on the remand order, said that -- viewed it as

13  undone.  So now we have a trustee who comes and seeks relief

14  from the automatic stay, not for him.  It's the strangest

15  application I've seen.  And he says, I would like relief from

16  the automatic stay to allow Ms. Hirsch to act.  That's what the

17  application is.  It's not for me to act; it's for Ms. Hirsch to

18  act.  But this Court had denied Ms. Hirsch that -- that ability

19  five times and now the U.S. -- the trustee, as champion of

20  Ms. Hirsch's position, says I'm going to ask the Court to do

21  something for Ms. Hirsch where Ms. Hirsch had asked before and

22  Ms. Hirsch was denied.

23        It's time to end this.  This -- this has gone up and

24  down to the District Court.  The issue is here again.  Just --

25  it's mind boggling.  Besides, if it does go back to the

28

1    District -- go back, what is the trustee going to do, it's

2    post-trial?  There's no appeal.  He seeks to intervene for what

3    purpose?  It's a nonsensical motion.  It's simply a request to

4    allow Ms. Hirsch to do what this Court has said you can't do

5    because this Court has said it five times.

6         I think the papers that were nicely prepared by the

7    Stein Riso firm while I was on a trial -- a jury trial last

8    week; say everything that we need to say.  I'm here to answer

9    any questions.

10        I do want to say one thing.  Not that it's germane to

11   anything but because statements are made that give impressions.

12   Mr. Weiner says there was a 3.5 million dollar loan.  Now, if I

13   was sitting without knowledge I would think that Mr. Hirsch

14   pocketed 3.5 million dollars.  In fact, that was a post-

15   petition -- a post-confirmation construction loan that is only

16   for the purposes of drawing for construction purposes to

17   increase the value and to undo the damage that was done by the

18   receiver in this case.  There is no money that went to Mr.

19   Hirsch.  It's simply a construction loan.  Again, not relevant

20   but it gives the wrong impression and I think I had to say it.

21             THE COURT:  Thank you Mr. Haspel.

22             MR. KROHN:  Your Honor, if I may?  On behalf --

23             THE COURT:  You have to speak into the microphone,

24   Mr. Krohn.

25             MR. KROHN:  On behalf of the receiver I take

29

1   exception to the last remark of the damages that were done by

2   the receiver.  This Court --

3           THE COURT:  Mr. Krohn, that -- that issue is

4   completely irrelevant.  Counsel was responding to a new

5   argument made by counsel for the movant.

6           MR. KROHN:  Thank you.

7           THE COURT:  I find that that particular -- that

8   particular one statement issues not relevant to this

9   application.

10          Mr. Hufnagel, does the United States Trustee's office

11  have a position on this application?

12          MR. HUFNAGEL:  Your Honor, Brian Hufnagel for the

13  United States Trustee.  Your Honor, I think what is the

14  question to ask here is whether or not it was a settlement and

15  whether there was a settlement that was approved by the Court

16  in the context of the entity debtor cases that's binding in

17  this case.  And if there was no settlement or if the settlement

18  was done improperly, the plan -- there was a motion to waive

19  the disclosure statement, the plan itself doesn't describe the

20  undoing of a fraudulent conveyance.  But on the other hand

21  there was language to that effect in the motion to dispense

22  with the disclosure statement.

23          It's a real question.  If there was not settlement

24  then it makes sense to lift the stay and allow the trustee to

25  proceed.  And I think that's the question that the two sides

30

1    are tossing back band forth here for you.

2              THE COURT:  Thank you, Mr. Hufnagel.

3              MR. SKLAREW:  Your Honor?

4              THE COURT:  Yes.

5              MR. SKLAREW:  May the United States be heard on this?

6              THE COURT:  Briefly.

7              MR. SKLAREW:  Yeah.  Your Honor, first of all the

8    United States joins in the motion to -- to lift the stay.  And

9    I find it just very difficult to listen to the counter-

10   arguments that are made to this motion.  They are so factually

11   wrong it's just beyond my belief.  I've looked at this record.

12   I've studied this record and I was at the oral argument as

13   well, with Judge Amon.  And I won't -- I won't go into what

14   you're concerned about.  I know -- I realize that's -- it's

15   past.

16             But the reason Judge Amon asked is important.

17   Mr. -- Ms. Hirsch has been making an argument, admittedly six

18   times now, that your original order granting the motion to lift

19   the stay for a limited purpose was broad enough to set aside

20   all the fraudulent conveyances.  He was constantly trying, at

21   the oral argument, to convince the judge --

22             THE COURT:  Counsel, I'm not -- I'm not going to go

23   back to that.  That -- this has been, now, a matter of

24   litigation over four years.  I know what my original order

25   intended.  I know what the application to that original order

VERITEXT/NEW YORK REPORTING COMPANY

212-267-6868                                        516-608-2400
Case 1-02-17966-dem   Doc 484   Filed 12/07/07   Entered 12/10/07 17:35:46   Desc
Main Document     Page 30 of 49

31

1   was.

2          MR. SKLAREW:  I agree.  I agree.  I totally agree

3   with you.  This is -- I'm going to tell you why -- this is why

4   it's so beyond belief.  If you'll just hear me out on this, I

5   totally agree with you.  I tried to argue, I was the one who

6   suggested to Judge Amon that why couldn't the subsequent, years

7   later, suggestions by Ms. Hirsch to submit a -- a different

8   order be construed as a different motion to lift the stay.  And

9   Judge Amon insisted that would be an entirely different matter

10  and no one has made that motion and why haven't you.  And she

11  turned to the trustee and she turned to the United States and

12  she said, why haven't you made a motion to lift the stay to do

13  what you're asking to be done here, which is to allow these

14  alter ego claims to go forward and these fraudulent transfer

15  claims against just the Hirsch Family Trust and not the entity

16  debtors.  And that's why we're back.

17          Now, moving off that the reason I joined the

18  trustee's motion and the merits is one, Judge Yantze's decision

19  found that the IRS was defrauded.  Of course, we didn't know

20  about that.  We didn't get Judge Yantze's decision.  No one

21  gave it to us until 2005.  The -- in the entity debtor's cases,

22  and these are allegations in the paper, an assistant U.S.

23  Attorney showed up because there was an objection to a 2,000

24  dollar employment tax claim that was then agreed to be full

25  paid in a plan and that was the end of the U.S. Attorney's

32

1    involvement.  That Assistant U.S. Attorney not only did not

2    know about Benjamin Hirsch's tax liabilities but a provision of

3    the internal revenue code would have made it a crime for the

4    IRS to tell that Assistant U.S. Attorney about Ben Hirsch's tax

5    liabilities in the entity debtor's case, 6103 of the

6    Internal Revenue Code, the disclosure rules.

7         So that U.S. Attorney new nothing about the other

8    case.  And of course there was not yet any kind of a situation

9    where we were on notice on the other case, in the other case,

10   what was going on in the Ben Hirsch case, this case right now.

11        In addition, if you look at the State Court

12   judgments, in the context of a marital dispute where all you're

13   doing is --

14        THE COURT:  There is no judgment in the State Court.

15   That's a very important judgment in this case.

16        MR. SKALREW:  Excuse me.  Yes, and let me go right to

17   that.  Let me skip to that.  I don't know how to pronounce it

18   its Z-D-N -- Z-D-A-N-O-K vs Glidden; this is a Second Circuit

19   case.  It has nothing to do with the Rucker Feldman doctrine.

20   It basically says that interlocutory decisions of another court

21   are collateral estopple, even if they're interlocutory.  They

22   are collateral estopple.  They must be appealed.  If they are

23   actual summary judgment decisions, they're actual merits

24   decisions as opposed to some kind of a procedural rule, they

25   are collateral estopple.  There is no reason to not obey them

33

1    in a federal court and nothing to do with Rucker Feldman.  And

2    that's 327 F.2d. 944.  There is a currently -- right now on the

3    Second Circuit precedent --

4            THE COURT:  Mr. Sklarew -- this is -- no, this is

5    apples into oranges and I'm going to ask you to move on.  The

6    key -- the key item about that issue is that while there is a

7    State Court decision that decision has not been reduced to

8    judgment.

9            MR. SKLAREW:  I understand that.  I'm dealing exactly

10   with that.  This was a case that dealt with that kind of

11   argument and I also have many other cases that deal with

12   exactly that kind of argument.  That in an interlocutory

13   decision that is not reduced to judgment, that's what I'm

14   talking about, not judgment.

15           The IRS, by the way, has had to face this issue in

16   literally two dozen cases in the past five years where people

17   have argued to us they've run into bankruptcy after there's a

18   preliminary decision in one court in our favor and then they

19   try to relitigate and the courts -- and so we have to deal with

20   this issue all the time.  I've had to deal with it recently in

21   another case in New Hampshire.  So I'm very familiar with the

22   law in this area.

23           The interlocutory non-judgment, non-appealable

24   decision of the State Court is a binding decision on Benjamin

25   Hirsch and more importantly, it's binding on the Hirsch Family

34

1  Trust which was a party in that case and is not a party in this

2  case.  It was represented by separate counsel.  The

3  determination that the Hirsch Family Trust is the alter ego of

4  Benjamin Hirsch for all debt collection purposes and was set up

5  to defraud the United States as well is a binding judgment

6  until they appeal it.  Some day the stay is going to lift here

7  whether you lift it now or not.  Some day the stay is going to

8  terminate and this Court doesn't have any jurisdiction to

9  eliminate Ms. Hirsch's claims against a non-debtor, the Hirsch

10  Family Trust or the United States claim against the --

11        THE COURT:  And let me just stop you right there and

12  thank you for your argument.  That is certainly not what this

13  Court is trying to do.  This Court has its view of its role as

14  essentially a simple mission, sir, and that is to interpret and

15  apply the law to the facts of the case.  And I've been

16  presiding over this case now for just about six years.  And I

17  really do -- I really do take umbrage with the comment of

18  counsel for a party who's relatively new to the case, who took

19  months, if not more than a year to advise the Court of its

20  position that it found a conflict of interest in these cases.

21  And -- and I will tell you that I did not appreciate that last

22  statement and I view it as -- as a real threat from the

23  government against the Court.  And I, as a former federal

24  prosecutor, won't abide it, won't tolerate and certainly will

25  not bow to it.

35

1        MR. SKLAREW:  Well, Your Honor, I'm sorry and I

2   apologize but you've misinterpreted my comments because that's

3   not what they're intended as.  My concern is simply that under

4   the case law -- what normally happens in a stay lift

5   proceeding, which is summary, is that the merits are not

6   decided and that the merits are left, whether the stay is

7   lifted now or at some future time to a future Court.  And I'm

8   not suggesting that you were trying to do otherwise.  My point

9   is that why wait?

10       THE COURT:  Well, let me just --

11       MR. SKLAREW:  Some day this has to be litigated.

12       THE COURT:  Let me just -- why don't we just go to

13  our separate corners with this understanding, I'll let you tell

14  me what happens in a normal tax case and not tell me what

15  happens in a usual bankruptcy, routine lift stay motion; how

16  about that?

17       MR. SKLAREW:  Your Honor, actually I'd like to file

18  some papers in support of the trustee in this, if that's

19  possible, especially since the papers in response to the

20  trustee are making all kinds of false allegations about the

21  United States and notice and the U.S. Attorney and things like

22  that.  And I believe we're entitled to respond to those and to

23  take a position in support of the trustee in light of -- in

24  light of what's happening.

25       THE COURT:  And what is it exactly that is happening?

36

1          MR. SKLAREW:  I believe that the trustee should be

2   allowed to pursue this judgment and let the State Court decide

3   whether or not the alter ego claim should go forward or whether

4   or not all these fraudulent conveyances, which I agree by the

5   way add up to well over a million dollars.  I'm not talking

6   about the three and a half million mortgage.  I understand

7   Mr. Haspel's comment on that.  I appreciate the information and

8   maybe he's right.  But looking at the properties that were

9   transferred at the time they were transferred and the values

10  and the additional 500,000 dollars -- 547,000 dollars in cash

11  that Judge Yantze found was improperly transferred to the

12  trust.  And the commingling and the back-dating of the stock

13  certificates that she found and the use of the trust assets for

14  personal uses.  I feel that the stay should be lifted to allow

15  the State Court Appellate process to go forward.  The trustee

16  should be able to intervene.  The trustee can intervene before

17  judgment, there's not yet a final judgment.  And in fact the

18  Second Circuit, at least in Federal Court, says that you can

19  even intervene on an appeal to join with a party if you have a

20  coordinating interest.

21          So, the trustee should be able to intervene in that

22  State Court action and let the appeal take its course and see

23  what happens.  Now obviously they are going to defend that

24  action on the basis that they paid 136,000 back and that

25  satisfies all the values.  The State Court should decide

37

1    whether that satisfies all the values.

2         I disagree, by the way, that a huge valuation motion

3    was made and determined in your court with notice to everyone,

4    which I heard Mr. Haspel say.  It's my understanding, at least

5    from my knowledge of what happened in this case, that the U.S.

6    Trustee's office did not sign off on any of the fraudulent

7    transfer values or set aside.  It wasn't even aware of them.

8    The U.S. Trustee's office, by the way, they say was served with

9    the show cause order by Ms. Hirsch.  I don't see anything on

10   the docket showing a certificate of service.  Maybe they were

11   served, maybe they weren't.  The United States certainly was

12   not served with that.

13        We had no notice to the conflict of interest, by the

14   way, until shortly before we brought it up because we weren't

15   involved, this office at least was not involved in the entity

16   debtor's cases.  And just as the U.S. Trustee -- excuse me,

17   just as the U.S. Attorney who handled the entity debtor's cases

18   didn't know about Ben Hirsch's tax liabilities, we were

19   assigned Mr. Hirsch's cases and we had no knowledge of the

20   entity debtor's tax liabilities.

21        There really are compartmentalized rules.  If you

22   look at 6103(h) each office is only allowed to be told the

23   things it needs for the taxpayer's taxes at issue in that

24   proceeding.  These were two different taxpayers.  There was an

25   employment tax by one of the four entity debtors, very small,

38

1    2,000 dollars paid in full in the plan.  And there's a huge tax

2    in this case which no one informed us of any of the fraudulent

3    transfers that occurred until -- like I say, 2005.

4            Well admittedly, and I apologize, we didn't find and

5    bring up the conflict of interest issue faster, and I wish we

6    had, it only came to our attention as a result of trying --

7    essentially a result of looking into the case as a result of

8    the fee applications.  When we looked at the entity debtor's

9    cases and found out what was going on.

10           THE COURT:  Thank you.

11           MR. SKLAREW:  And prior to that we were trying to

12    settle.

13           THE COURT:  Thank you, Mr. Sklarew.  Your application

14    to file additional papers is denied.  The Court is taking the

15    matter under advisement and reserving decision.

16           Calendar numbers 10 and 11, Hirsch v Hirsch, motions

17    for a protective order.  I'm going to adjourn those hearings on

18    the motion for protective order.  And my clerk is going to hand

19    out the Court's order to show cause.

20           I will return -- have the motions returnable on

21    February 7, 2008.  From today until that time or determination

22    of this order to show cause, all dates which call for

23    performance under the Court's amended pre-trial scheduling

24    order are stayed.  All dates called -- for which compliance are

25    called for, any subpoenas issued by the plaintiff, all

39

1    seventeen of them, are stayed.  My clerk shall distribute the

2    order to show cause to all parties.

3         (Hearing concluded at 11:20 AM)

40

**I N D E X**

RULINGS

|  | Page | Line |
|---|---|---|
| Mr. Sklarew's Application | 38 | 13 |
| to File Additional | | |
| Papers Denied | | |
| Motion for Protective | 38 | 16 |
| Order Adjourned | | |

41

1

2          **C E R T I F I C A T I O N**

3

4      I, Pnina Eilberg, court approved transcriber, certify that the

5      foregoing is a correct transcript from the official electronic

6      sound recording of the proceedings in the above-entitled

7      matter.

8

9      _____  December 5, 2007

10     Signature of Transcriber              Date

11

12     Pnina Eilberg

13     typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25

**A**

abandons 21:7
abeyance 10:16
abide 34:24
ability 27:18
able 14:14 22:10
    36:16,21
above-entitled 41:6
accept 16:3
act 10:12 27:16,17
    27:18
action 2:16 10:13
    10:23 15:6 22:13
    22:13,15 24:8,9
    24:19 36:22,24
actions 10:17 21:4
    24:5,6,25
actual 32:23,23
add 11:25 12:18
    14:7,19 17:5 21:6
    36:5
addition 32:11
additional 10:20
    12:5,6,7,17,23,23
    36:10 38:14 40:7
additionally 20:13
    24:3
address 9:13 17:21
addressed 9:25
adequate 20:23
adjourn 38:17
Adjourned 2:1,6
    40:10
admittedly 30:17
    38:4
adversary 8:16
advise 34:19
advisement 38:15
affect 15:6
affirmatively 17:1
ago 13:20
agree 10:22 12:9
    16:1,17,20 17:1,9
    17:16,19 18:6
    31:2,2,2,5 36:4
agreed 12:5,19,20

12:20 13:21 31:24
agreeing 16:7,18
    17:15
agreement 10:10
    12:12 15:1,10
    16:3,11,18 17:6,9
    17:10
allegation 15:24
    16:25
allegations 31:22
    35:20
alleged 20:24
allotted 14:4
allow 19:13 27:16
    28:4 29:24 31:13
    36:14
allowed 36:2 37:22
allowing 24:19
allows 12:16
alter 2:15 24:4,11
    31:14 34:3 36:3
amended 38:23
Amon 25:9,11
    30:13,16 31:6,9
amount 21:9
analysis 22:1,3
answer 15:18,19
    28:8
Apartments 3:5
apologize 35:2 38:4
appeal 23:24 28:2
    34:6 36:19,22
appealed 32:22
appeals 22:23
appearance 9:11
appearances 8:3
appearing 8:11
appellate 22:18
    36:15
apples 33:5
applicants 16:3
application 2:1,6
    8:11 9:16,19
    10:25 11:3 17:17
    17:25 18:15,18
    19:17,19,22 20:6
    20:7 25:9,9,10

27:4,15,17 29:9
    29:11 30:25 38:13
    40:6
applications 9:15
    18:2,8 24:23 38:8
apply 34:15
appreciate 34:21
    36:7
approve 16:22
    17:13,17
approved 29:15
    41:4
approximately
    23:8
area 33:22
argue 31:5
argued 18:25 33:17
arguing 22:21
argument 9:24
    11:11,14 12:23
    15:5 16:20 17:3
    18:14 23:23 29:5
    30:12,17,21 33:11
    33:12 34:12
arguments 11:19
    20:1 30:10
aside 2:13 17:23
    30:19 37:7
asked 9:3,4 13:21
    13:23 27:21 30:16
asking 20:14 31:13
assets 11:6 36:13
assigned 37:19
assistance 27:3
assistant 31:22
    32:1,4
Associates 6:19 8:5
attached 12:13
    15:1
attention 38:6
attorney 4:4 6:19
    7:2 15:2 25:5
    31:23 32:1,4,7
    35:21 37:17
attorneys 4:13 5:13
    13:7
Attorney's 31:25

automatic 2:11
    27:14,16
Avenue 6:10
avoid 11:13
await 18:16
award 10:12,15
    16:22
aware 37:7

**B**

B 1:21
back 9:19 19:21
    23:20,25 24:24
    27:25 28:1 30:1
    30:23 31:16 36:24
backwards 12:16
back-dating 36:12
band 30:1
bankruptcy 1:2,14
    1:23 13:8 27:2
    33:17 35:15
basically 20:2,6
    32:20
basis 36:24
beginning 8:3
    25:15
behalf 2:3,8,20 3:4
    8:11 20:19,19
    23:21 28:22,25
belief 30:11 31:4
believe 14:25 27:5
    35:22 36:1
believes 20:20
belonged 21:24
Ben 5:4 32:4,10
    37:18
benefit 23:13
Benjamin 1:8 2:20
    32:2 33:24 34:4
Beth 2:3 6:14 8:10
beyond 18:24
    30:11 31:4
binding 29:16
    33:24,25 34:5
boggling 27:25
Bonnie 5:8 8:20
bow 34:25

Box 5:3
breach 14:25 15:23
breached 16:1 27:5
Brian 6:6 8:17 12:2
    29:12
briefing 12:7
Briefly 30:6
bring 10:17 20:11
    38:5
bringing 24:18
broad 30:19
Brooklyn 1:16 5:15
    6:4 7:5
brought 20:10
    23:17 25:1 37:14
Bruce 5:17 8:12
B.R 14:3,4

**C**

C 4:2 8:1 41:2,2
Cadman 1:15 6:3
calculates 20:25
Calendar 19:10
    38:16
call 26:7 38:22
called 38:24,25
Carlebach 3:4 6:18
    6:23 8:3,4,4
CARLINO 4:12
case 1:4 10:15
    13:11,24 14:9,10
    18:1,2 19:14
    20:20,22 22:16
    25:15,16,21,22,23
    26:7,16,17 27:4,4
    27:7 28:18 29:17
    32:5,8,9,9,10,10
    32:15,19 33:10,21
    34:1,2,15,16,18
    35:4,14 37:5 38:2
    38:7
cases 13:10,15 14:2
    18:13 22:3 25:17
    26:11 29:16 31:21
    33:11,16 34:20
    37:16,17,19 38:9
cash 36:10

**cause** 26:9 37:9 38:19,22 39:2
**certain** 16:15 21:8
**certainly** 12:21,22 17:14,18 24:23 34:12,24 37:11
**certificate** 37:10
**certificates** 36:13
**certify** 41:4
**champion** 27:19
**Chapter** 5:13 8:7 8:13,14 10:11,14 11:5 12:8 13:8 15:14 16:10,11 19:13
**Chatsworth** 21:13 21:18
**chips** 11:1
**Circuit** 14:5 32:18 33:3 36:18
**citations** 13:25
**cited** 18:13
**city** 23:5
**Civil** 2:19 3:2,3
**claim** 16:5,5,5,7,21 16:24 31:24 34:10 36:3
**claims** 12:15 15:5,7 16:15 17:2,24 31:14,15 34:9
**clear** 14:14 26:15
**clearly** 16:21
**clerk** 38:18 39:1
**Clinton** 7:3
**code** 32:3,6
**COHN** 4:12
**collateral** 10:12,22 17:20 32:21,22,25
**collaterally** 16:14
**collection** 34:4
**collective** 25:16
**come** 11:4 13:24 20:16 23:25
**comes** 27:13
**coming** 20:18 26:19,19,20
**commence** 22:13

23:25
**commenced** 22:16
**comment** 34:17 36:7
**comments** 11:18 35:2
**commingling** 36:12
**compartmentaliz...** 37:21
**compensation** 2:1 2:6 20:21
**complete** 12:24
**completely** 29:4
**compliance** 38:24
**concern** 35:3
**concerned** 30:14
**concluded** 39:3
**conclusion** 21:20
**condition** 17:16
**conditions** 12:17
**conduct** 25:17
**Coney** 23:3
**confirmation** 20:23 22:2 23:2 24:8 26:11
**conflict** 34:20 37:13 38:5
**confused** 15:22
**connection** 10:14
**consented** 12:4
**considering** 11:20
**constantly** 30:20
**construction** 28:15 28:16,19
**construed** 31:8
**contain** 22:3
**contained** 22:1
**context** 22:21 29:16 32:12
**conveyance** 17:23 21:4,14 27:1,11 29:20
**conveyances** 20:25 21:21 22:10,23 30:20 36:4
**convince** 30:21
**convinced** 27:3

**coordinating** 36:20
**corners** 35:13
**corporate** 22:2
**correct** 17:8 41:5
**counsel** 2:2,7 8:7 11:10,16,17,18 13:12 14:9,13,16 16:3 17:4 19:20 24:18 26:23 27:2 27:2 29:4,5 30:22 34:2,18
**Count** 13:16 14:3
**counter** 30:9
**Country** 4:14
**course** 24:15 25:17 31:19 32:8 36:22
**court** 1:2,14 2:12 2:16 5:14 8:2,23 9:1,3,4,7,15,17,24 10:2,8,23,25 11:2 11:2,7,9,13,16,24 12:1,9,13,25 13:2 13:17,23 14:6,18 14:21,23 15:8,19 15:22 16:9 17:3 17:11 18:5,9,12 18:21 19:2,4,10 19:14,15,19,19,21 20:1,1,3,5,9,11,12 21:14,17 22:8,9,9 22:11,19,21,24,24 23:20,20,22,25 24:4,6,11 25:2,4,8 25:10,18,22 26:2 26:2,4,4,5,13,15 26:19 27:7,12,18 27:20,24 28:4,5 28:21,23 29:2,3,7 29:15 30:2,4,6,22 32:11,14,14,20 33:1,4,7,18,24 34:8,11,13,13,19 34:23 35:7,10,12 35:25 36:2,15,18 36:22,25 37:3 38:10,13,14 41:4
**courts** 33:19

**Court's** 22:25 25:21 38:19,23
**credible** 21:24
**creditor** 20:16 21:22 22:16
**creditors** 20:17,20 23:14,15,21 26:19
**crime** 32:3
**crunched** 27:7,8,8 27:9
**currently** 23:6 33:2
**Curto** 4:12 8:15

**D**

**D** 8:1 40:2
**damage** 28:17
**damages** 29:1
**date** 19:3 41:10
**dates** 38:22,24
**David** 3:4 6:18,23 8:4
**day** 26:8,10,23,25 34:6,7 35:11
**days** 13:20
**DC** 5:5
**deal** 33:11,19,20
**dealing** 22:22 33:9
**dealt** 33:10
**debt** 34:4
**debtor** 1:10 2:13 4:4 8:8 13:7,13 21:22,23,25 23:10 24:5,12 26:24,25 26:25 27:3 29:16
**debtors** 2:7 22:5,6 24:7 26:12,21 31:16 37:25
**debtor's** 2:2,15 11:6 23:9 31:21 32:5 37:16,17,20 38:8
**December** 41:9
**decide** 18:17 36:2 36:25
**decided** 18:3 25:10 35:6
**deciding** 12:22

17:25 24:22
**decision** 14:4,15 18:15 21:15 22:25 25:18,20,21 26:6 26:15,17 27:6,10 31:18,20 33:7,7 33:13,18,24,24 38:15
**decisions** 32:20,23 32:24
**declaring** 2:14
**defend** 36:23
**defraud** 34:5
**defrauded** 31:19
**denied** 27:18,22 38:14 40:8
**DENNIS** 1:22
**DEPARTMENT** 5:1 6:1
**describe** 29:19
**despite** 20:17
**determination** 10:18 34:3 38:21
**determine** 10:23
**determined** 37:3
**different** 13:11 31:7,8,9 37:24
**difficult** 30:9
**directed** 16:13
**direction** 26:19
**directly** 22:7
**disagree** 18:25 37:2
**disagreement** 19:8
**disclosure** 26:21 29:19,22 32:6
**discussed** 21:17,18 21:19
**disenfranchise** 26:25
**dispense** 29:21
**dispute** 32:12
**distinctly** 13:11
**distribute** 39:1
**District** 1:3 20:1,1 20:9 27:24 28:1
**DIVISION** 5:2
**divorce** 19:22

docket 37:10
doctrine 32:19
doing 32:13
dollar 12:10 21:9
   24:14,16 28:12
   31:24
dollars 10:6 14:11
   20:24 21:1,2 23:5
   23:7,8 28:14 36:5
   36:10,10 38:1
doubt 19:8
Douglas 7:2 8:19
dozen 33:16
drawing 28:16
duties 26:1,2
duty 27:5

E
E 1:21,21,22 2:3
   4:2,2 6:14 8:1,1
   40:2 41:2
easily 27:1
East 1:15 6:3 23:6
   23:7
EASTERN 1:3
eaten 24:16
edition 15:3
effect 12:15 15:4,12
   16:4,7 17:2,20
   24:24 25:20 29:21
effectively 25:23
ego 2:15 24:4,11
   31:14 34:3 36:3
Eilberg 3:25 41:4
   41:12
either 11:13 18:16
electronic 41:5
eliminate 34:9
eminently 26:15
employment 31:24
   37:25
ended 16:24
enter 19:21 23:22
   23:22
entered 22:22
entirely 31:9
entitled 20:21

35:22
entity 22:5,6 24:7
   26:12,21 29:16
   31:15,21 32:5
   37:15,17,20,25
   38:8
entry 19:13
equity 23:12 24:13
   24:17
especially 35:19
ESQ 4:9,17 5:7,8
   5:17,18 6:6,13,14
   6:23 7:7
essentially 34:14
   38:7
estate 13:9,13,15
   14:8,9 20:14,22
   21:9 23:14,16,22
estop 16:14
estopple 10:13,22
   17:20 32:21,22,25
etcetera 12:16 15:5
eve 13:20
eventually 17:23
   17:24
everybody 26:20
everybody's 25:17
exactly 33:9,12
   35:25
example 21:3
exception 29:1
Exchange 6:20
excuse 32:16 37:16
Exhibit 12:13 15:2
expenses 2:3,8
explicitly 16:20
extension 13:21,23
ExxonMobil 25:22
eyes 25:18 26:3
e-mail 16:19

F
F 1:21 41:2
face 33:15
fact 22:8 26:5,20
   28:14 36:17
facts 13:11 34:15

factually 30:10
Fair 25:14
fall 11:1
false 35:20
familiar 33:21
family 2:14 22:7
   24:4 31:15 33:25
   34:3,10
far 14:13
faster 38:5
favor 33:18
February 38:21
federal 2:19 3:2,3
   33:1 34:23 36:18
fee 8:11 9:15,16,19
   10:12,12,15,25
   12:10 17:25 18:2
   18:8,15 24:22
   27:4 38:8
feel 10:22 11:10
   36:14
feels 11:17
fees 2:2,7 8:7 10:5
   12:22 16:12,22
   17:13
Feldman 25:23
   32:19 33:1
fiduciaries 13:8
fiduciary 13:13
   27:5
figure 12:10
file 19:1 35:17
   38:14 40:7
filed 2:3,8,20 3:4
   15:25 16:19 21:3
   26:8
filing 26:6,8
final 2:1,12 36:17
find 29:7 30:9 38:4
finding 24:8,10
findings 22:17,18
   23:19 24:3
fine 10:8
firm 9:21 10:5,9
   28:7
firms 10:13 12:5,18
first 9:16 10:12

17:22,24 20:13
   26:7 30:7
five 10:24 21:3,6
   27:19 28:5 33:16
flat 21:16
flawed 21:3,10
Fochelli 8:15
focus 26:9
followed 21:20
FORCHELLI 4:12
foregoing 41:5
forgive 19:15
former 34:23
forth 21:2 23:1
   26:14 30:1
forward 31:14 36:3
   36:15
found 13:15 14:3,4
   21:13,22 22:11
   31:19 34:20 36:11
   36:13 38:9
four 21:1 30:24
   37:25
Franklin 5:4
fraudulent 2:13
   17:22 21:4,14
   22:11 27:1,11
   29:20 30:20 31:14
   36:4 37:6 38:2
full 11:3 17:18
   31:24 38:1
further 18:18 23:1
future 10:13,17,23
   35:7,7
F.2d 33:2

G
G 8:1
Gary 4:17 8:15
Gerard 6:13 8:9
germane 28:10
give 14:1 18:12
   26:24 28:11
given 11:11,12
gives 28:20
Glidden 32:18
go 9:19 18:24 19:21

23:20 24:24 27:25
   28:1 30:13,22
   31:14 32:16 35:12
   36:3,15
going 9:10 14:14,16
   16:6 19:6 25:5
   27:20 28:1 30:22
   31:3 32:10 33:5
   34:6,7 36:23 38:9
   38:17,18
good 8:2,23,24 13:3
   25:13
Goshen 4:7
government 15:2
   24:22 34:23
government's 18:9
grant 11:3 19:23
granting 19:22
   30:18
grossly 23:3
guess 12:16
guidance 26:18
guide 27:6

H
half 23:5 24:14,16
   36:6
Hampshire 33:21
hand 15:10 29:20
   38:18
handle 22:25
handled 37:17
Hansey 24:10
happen 20:9 24:19
happened 17:22
   25:7 26:4 37:5
happening 35:24
   35:25
happens 35:4,14,15
   36:23
hard 27:5
harmed 14:10
   20:21
harmful 13:14
Haspel 2:8,9,20 4:3
   4:9 8:6,6 9:21
   10:5,9 11:24,25

17:4 19:6 25:14
28:21 37:4
**Haspel's** 17:14
36:7
**hear** 9:1,8 27:4,6
31:4
**heard** 11:19 17:12
19:16 20:12 30:5
37:4
**hearing** 2:1,6,11,18
3:1 11:21 18:18
20:24 23:2 24:8
39:3
**hearings** 22:2
38:17
**held** 10:16
**HFT** 2:14
**higher** 23:10
**Hirsch** 1:8 2:12,14
2:21 4:13 8:16
14:8,9 19:20
20:14,19,22 22:16
23:14 27:16,17,18
27:21,21,22 28:4
28:13,19 30:17
31:7,15 32:10
33:25,25 34:3,4,9
37:9 38:16,16
**Hirsch's** 27:20 32:2
32:4 34:9 37:18
37:19
**holding** 11:6
**holiday** 13:20
18:23
**HON** 1:22
**Honor** 8:24 9:16,19
10:4,7 11:8,15,22
12:3,23 13:1,3,19
14:20,22,24 15:15
15:17 18:19,20
19:5,6,18 27:10
28:22 29:12,13
30:3,7 35:1,17
**Hufnagel** 6:6 8:17
8:17 12:1,2,2,25
13:1 29:10,12,12
30:2

**huge** 37:2 38:1
**Hyman** 25:6

------

**I**

**immediately** 21:20
**impetuses** 26:6
**important** 30:16
32:15
**importantly** 33:25
**impossible** 14:1,1
**impression** 28:20
**impressions** 28:11
**improperly** 29:18
36:11
**increase** 28:17
**independent** 14:12
**indicated** 26:3
**Indiscernible** 8:25
9:6
**individual** 20:15,16
**information** 36:7
**informed** 38:2
**insisted** 31:9
**intended** 30:25
35:3
**interest** 34:20
36:20 37:13 38:5
**interests** 14:8
**interlocutory** 32:20
32:21 33:12,23
**internal** 12:11 32:3
32:6
**interpret** 34:14
**interpreted** 25:12
**intervene** 2:15
23:21 28:2 36:16
36:16,19,21
**intervenes** 22:12
**invite** 25:6
**invited** 19:19 20:6
25:9
**involved** 25:2
37:15,15
**involvement** 32:1
**irrelevant** 29:4
**IRS** 9:21 20:19
23:15 31:19 32:4

33:15
**Island** 23:3
**issue** 9:25 10:1,22
15:9 17:21 21:18
24:20 27:24 29:3
33:6,15,20 37:23
38:5
**issued** 16:12 38:25
**issues** 12:15 15:5,7
15:12 23:24 26:9
26:12 29:8
**item** 33:6

------

**J**

**J** 2:8,9,20 4:3,9
5:18 6:6
**Jack** 3:4 8:5
**JLM** 14:4
**join** 36:19
**joined** 31:17
**joins** 30:8
**Joseph** 2:8,9,20 4:3
4:9 8:6
**judge** 1:23 20:1
21:17 23:22 25:6
25:9,11 30:13,16
30:21 31:6,9,18
31:20 36:11
**judgment** 2:13
19:14,14,21 22:22
22:23 32:14,15,23
33:8,13,14 34:5
36:2,17,17
**judgments** 32:12
**July** 23:4
**jurisdiction** 34:8
**jury** 28:7
**Justice** 5:1 6:1
24:10

------

**K**

**Kensington** 3:5
6:19 8:5
**key** 33:6,6
**kind** 32:8,24 33:10
33:12
**kinds** 35:20

**know** 9:18 11:10,12
11:16,17,18 24:20
30:14,24,25 31:19
32:2,17 37:18
**knowledge** 28:13
37:5,19
**Krohn** 7:1,7 8:19
8:19 14:18,20
28:22,24,25 29:3
29:6
**Kushner** 4:17 8:15
8:15 14:21,22
26:8 27:8

------

**L**

**laid** 12:4
**language** 15:11
29:21
**law** 6:18 16:16
21:22 33:22 34:15
35:4
**left** 22:4 35:6
**letter** 18:16
**Lexington** 6:10
**liabilities** 32:2,5
37:18,20
**Liberty** 13:16 14:3
**lift** 17:21 29:24
30:8,18 31:8,12
34:6,7 35:4,15
**lifted** 35:7 36:14
**light** 35:23,24
**likes** 12:24
**limit** 11:18
**limitation** 24:1
**limitations** 22:15
**limited** 25:24 30:19
**line** 24:20 40:5
**listen** 30:9
**literally** 33:16
**litigated** 24:5 35:11
**litigation** 2:7 8:6
15:13 26:23 30:24
**LLC** 6:19 8:5 13:16
14:3
**LLP** 2:2,4 4:12
5:12 6:9

**loan** 28:12,15,19
**long** 16:24
**look** 25:22 26:17
32:11 37:22
**looked** 13:9 27:6
30:11 38:8
**looking** 36:8 38:7
**lot** 18:24

------

**M**

**M** 4:17
**majority** 13:12
**making** 16:25
30:17 35:20
**malpractice** 10:14
15:6 16:5,23
17:24
**Mantel** 2:2,4 6:9
8:9,11
**marital** 32:12
**Mark** 3:4 8:5
**market** 23:9
**material** 12:19
16:2,17
**math** 21:10
**mathematics** 21:2
**matrimonial** 26:10
26:16
**matter** 1:6 23:20
30:23 31:9 38:15
41:7
**matters** 8:8 20:11
20:15
**Matthews** 4:5
**mean** 15:8,9 24:24
**meant** 15:23
**merits** 11:23 12:22
31:18 32:23 35:5
35:6
**microphone** 28:23
**million** 21:1,1 23:5
23:7,8 24:14,16
28:12,14 36:5,6
**millions** 14:11
**MILTON** 1:22
**mind** 15:17 27:25
**MINEO** 4:12

**Mineola** 4:15
**minimum** 20:25
**minority** 13:12
**misinterpreted** 35:2
**mission** 34:14
**mode** 26:18
**modifying** 2:11
**money** 11:5 21:12 21:24 24:15 28:18
**months** 34:19
**moot** 17:23
**morning** 8:2,23,24 13:3
**mortgage** 21:13,18 22:6 23:4 24:14 24:16 36:6
**motion** 2:11,18 3:1 19:11,12 23:18,23 25:1,13,13,15 28:3 29:18,21 30:8,10,18 31:8 31:10,12,18 35:15 37:2 38:18 40:9
**motions** 22:24 38:16,20
**movant** 29:5
**move** 33:5
**moving** 31:17
**Musso** 5:12,13,18 8:12,13,14,14 20:4

**N**

**N** 4:2 8:1 40:2 41:2
**Nachama** 2:12
**name** 41:13
**names** 13:24 14:1
**necessarily** 12:19
**necessary** 14:17 27:11
**need** 11:17 22:13 28:8
**needs** 37:23
**negative** 21:6,7
**negotiated** 12:11
**never** 20:7 21:11

24:5 25:19
**new** 1:3,16 6:11,21 21:22 23:25 29:4 32:7 33:21 34:18
**nicely** 28:6
**nonsensical** 28:3
**non-appealable** 33:23
**non-debtor** 34:9
**non-judgment** 33:23
**normal** 35:14
**normally** 35:4
**notice** 32:9 35:21 37:3,13
**November** 1:18
**number** 10:15,15 15:3,3 19:10
**numbers** 26:14 27:7,8,8,9,9 38:16
**numerous** 20:20
**NY** 4:7,15 5:15 6:4 6:11,21 7:5

**O**

**O** 1:21 8:1 41:2
**obey** 32:25
**objection** 31:23
**objections** 10:11
**obviously** 36:23
**occasion** 20:10
**occurred** 38:3
**offer** 15:2
**office** 5:4 6:2 15:3 29:10 37:6,8,15 37:22
**OFFICES** 6:18
**official** 41:5
**oh** 16:23
**Okay** 9:18 11:24 12:1 20:5
**Old** 4:14
**ones** 21:6,7,8,8
**onward** 26:10
**opinion** 14:5
**opportunity** 19:1,2
**opposed** 20:15

32:24
**opposing** 16:2 20:18
**oral** 18:14 30:12,21
**oranges** 33:5
**order** 2:18 3:1 16:12 26:8 27:12 30:18,24,25 31:8 37:9 38:17,18,19 38:22,24 39:2 40:10
**original** 9:19 30:18 30:24,25
**owner** 24:12

**P**

**P** 4:2,2 8:1
**Page** 40:5
**paid** 10:16,24 11:3 21:24 31:25 36:24 38:1
**paper** 31:22
**papers** 11:9,12 12:7,14,23 13:4,6 13:20 16:18 17:14 18:23,24 20:18 21:2,12 22:4 23:3 28:6 35:18,19 38:14 40:8
**part** 10:21
**particular** 20:7,8 20:10,17 29:7,8
**particularly** 13:6 18:3
**parties** 9:22 10:3 25:11,12 39:2
**party** 20:23 22:8 25:12 34:1,1,18 36:19
**Paul** 7:1,7 8:19
**payment** 10:11 11:4 16:12,12,13 21:18
**pendency** 25:21
**people** 33:16
**performance** 38:23
**Perlin** 5:8 8:20,21

9:1,3,4,5,8,9,13 14:23,24 15:15
**Perlin's** 15:22
**permit** 2:11
**permitting** 2:15
**person** 11:14 26:24
**personal** 36:14
**Peter** 5:7 8:21 9:12 15:21 18:22
**petition** 28:15
**ph** 8:20
**phone** 8:22
**Place** 6:20
**plaintiff** 38:25
**plan** 10:17 26:21 29:18,19 31:25 38:1
**Plaza** 1:15 6:3
**PLLC** 2:9 4:3
**Pnina** 3:25 41:4,12
**pocketed** 28:14
**podium** 13:24
**point** 10:24 12:6,21 17:25 35:8
**position** 10:20 15:14 16:6,9,10 17:5 18:9 24:22 25:25 26:22,23 27:20 29:11 34:20 35:23
**positions** 13:14
**positive** 21:7,8
**possession** 13:13
**possibilities** 22:14
**possible** 35:19
**post** 5:4 28:14
**post-confirmation** 28:15
**post-conversion** 8:8
**post-trial** 28:2
**potential** 16:5 17:20
**potentially** 23:13
**precedent** 33:3
**preclude** 14:16 15:12

**precluded** 22:14
**preclusion** 16:7,21
**preclusive** 24:23 25:20
**preliminary** 13:25 33:18
**preparation** 10:7
**prepared** 28:6
**present** 2:12
**presented** 26:20
**presiding** 34:16
**pretty** 12:24
**pre-petition** 22:16
**pre-trial** 38:23
**price** 23:10
**primarily** 27:2
**printed** 41:13
**prior** 25:3 38:11
**pro** 8:7 10:6
**problems** 24:2
**procedural** 32:24
**Procedure** 2:19 3:2 3:3
**proceed** 29:25
**proceeded** 26:18
**proceeding** 8:16 13:8 14:13 23:19 26:10 35:5 37:24
**proceedings** 12:15 15:5,7 18:4 22:8 24:1 25:3 26:3 41:6
**process** 22:18 26:12 36:15
**pronounce** 32:17
**proper** 18:7 22:17
**properties** 21:19 23:1,4,13 24:12 24:13 36:8
**property** 14:11 23:5,6,7,10,12 24:17
**proposal** 17:7
**proposed** 2:12 9:20 10:2,4 15:10
**prosecutor** 34:24
**protect** 26:24

**protective** 3:1 38:17,18 40:9
**provided** 9:22
**provides** 15:11
**provision** 32:2
**purported** 10:14
**purpose** 28:3 30:19
**purposes** 11:21 12:10 28:16,16 34:4
**pursuant** 2:18 3:1 3:3 17:6 21:21
**pursue** 22:10,20 23:18 24:9,18 36:2
**pursued** 22:20 24:5
**pursues** 21:8
**pursuing** 16:14
**put** 9:22 13:18 17:19 18:7,13 23:4
**putting** 24:23
**P.O** 5:3

**Q**

**quash** 2:19 3:2
**question** 9:4 15:16 29:14,23,25
**questions** 28:9

**R**

**R** 1:21 4:2 8:1 41:2
**raised** 10:11 26:9 26:13
**rate** 10:6
**reached** 9:21 17:6
**read** 17:14
**reading** 12:16
**real** 29:23 34:22
**realize** 30:14
**really** 9:24 11:20 25:19 34:17,17 37:21
**reason** 12:6 20:10 23:17 25:22 30:16 31:17 32:25
**reasons** 24:21,25

**received** 18:23
**receiver** 28:18,25 29:2
**record** 12:24 30:11 30:12
**recording** 41:6
**recover** 24:15
**recovered** 14:12 21:13 23:13
**recovers** 21:8
**recovery** 21:5,17 22:3,4,5 24:18
**reduce** 10:5
**reduced** 25:19 33:7 33:13
**regard** 9:20,23
**relatively** 34:18
**relevant** 28:19 29:8
**relief** 19:11,13 27:13,15
**relitigate** 26:16 33:19
**rely** 26:14
**relying** 11:9
**remand** 27:12
**remark** 29:1
**repeat** 13:4
**repeating** 11:13
**reply** 11:21 19:1,7
**reporter** 8:25 9:1,2 9:3,4,6,8,10,14
**representative** 20:17
**represented** 34:2
**representing** 8:4 20:14
**request** 28:3
**reread** 21:14
**research** 13:9
**reserve** 18:15
**reserving** 16:21 38:15
**residence** 23:9
**resolved** 10:18 20:12 23:24
**respond** 13:5 35:22
**responding** 29:4

**response** 13:6 15:1 18:13 35:19
**responses** 9:23 10:3
**responsive** 21:12 22:4
**result** 21:4 25:19 38:6,7,7
**return** 38:20
**returnable** 38:20
**revenue** 12:11 32:3 32:6
**review** 13:25
**revisiting** 25:3,15
**re-argument** 22:24
**right** 14:6 16:22 18:3 24:9 32:10 32:16 33:2 34:11 36:8
**Riso** 2:2,4 6:9,13 8:9,9,9,10 28:7
**Road** 4:14
**Robert** 5:13,18 8:13,14
**role** 34:13
**Rosen** 7:2 8:19
**Rosenberg** 5:12 8:12
**routine** 35:15
**Rubin** 3:4 8:5
**Rucker** 25:23 32:19 33:1
**rule** 3:1,3 10:25 11:2,23 32:24
**rules** 2:18,19 3:2,3 32:6 37:21
**RULINGS** 40:4
**run** 24:1 33:17
**rush** 18:1

**S**

**S** 4:2 8:1
**sale** 11:6 23:8,9
**satisfies** 36:25 37:1
**saying** 15:9,13,23 15:25 16:11 23:11
**says** 15:4 16:4

22:19 27:15,20 28:12 32:20 36:18
**scheduling** 38:23
**SCHWARTZ** 4:12
**se** 8:7
**second** 14:5 21:11 26:8,10 32:18 33:3 36:18
**section** 21:19 22:15
**see** 14:15 17:22,22 20:9 36:22 37:9
**seek** 26:16
**seeking** 19:13
**seeks** 27:13 28:2
**seen** 27:15
**send** 19:8
**sense** 17:10 29:24
**sent** 16:19
**separate** 22:13 24:19,20 34:2 35:13
**served** 14:8 37:8,11 37:12
**service** 12:11 37:10
**set** 17:23 21:2 22:1 23:1 26:14 30:19 34:4 37:7
**setoff** 10:19
**setting** 2:13
**settle** 12:15 15:4,11 38:12
**settled** 12:10
**settlement** 9:20,23 10:2,4,10,21 12:4 12:6,12,18,20,21 14:25 15:1,24,25 16:2,8,22,24,25 17:7,15,17 18:7 29:14,15,17,17,23
**seventeen** 39:1
**share** 10:6
**sheer** 11:12
**shied** 26:5
**short** 19:1
**shortly** 18:23 37:14
**short-changed** 11:11

**show** 26:9 37:9 38:19,22 39:2
**showed** 31:23
**showing** 37:10
**shows** 23:9
**side** 15:13 22:19
**sides** 15:9 17:9 29:25
**sign** 37:6
**Signature** 41:10
**significant** 23:12 24:13
**simple** 34:14
**simply** 15:4,24 17:17 19:20 28:3 28:19 35:3
**single** 19:7
**sir** 34:14
**sitting** 28:13
**situation** 32:8
**six** 30:17 34:16
**sixth** 19:16,23 25:14
**SKALREW** 32:16
**skip** 32:17
**Sklarew** 5:7 8:21 8:24 9:2,10,12,12 15:17,21,21 16:16 17:8,12 18:6,10 18:11,20,22,22 19:3,5 30:3,5,7 31:2 33:4,9 35:1 35:11,17 36:1 38:11,13
**Sklarew's** 40:6
**small** 37:25
**somebody** 20:14
**sorry** 15:15 35:1
**sound** 41:6
**speak** 28:23
**special** 2:6 8:6 26:23
**specific** 15:11
**Spickler** 2:3 6:14 8:10,10 9:16,18 10:1,4,9 11:5,8,15 11:22 17:4,12

18:12,19 19:7
**start** 9:15 25:5
**started** 25:6
**state** 2:12,16 12:8
    12:17 16:20 19:14
    19:21 21:13,17
    22:11,19,24,24,25
    23:20,20,22 24:4
    24:10 25:18 26:4
    26:5 32:11,14
    33:7,24 36:2,15
    36:22,25
**stated** 19:20 26:7
**statement** 13:6
    15:20,22 17:5
    21:15 25:11 26:21
    29:8,19,22 34:22
**statements** 20:18
    21:12,23 28:11
**states** 1:2,14 5:1
    6:1,2 8:17,21 12:3
    12:3,8,14,14
    15:20 29:10,13
    30:5,8 31:11 34:5
    34:10 35:21 37:11
**stating** 18:16
**stay** 2:11 17:21
    19:11,13 22:12,21
    27:14,16 29:24
    30:8,19 31:8,12
    34:6,7 35:4,6,15
    36:14
**stayed** 38:24 39:1
**Stein** 2:2,4 6:9 8:9
    8:10 28:7
**stock** 36:12
**stop** 34:11
**strangest** 27:14
**Street** 4:5 5:14 7:3
    23:6,7
**studied** 30:12
**styled** 20:8
**submission** 18:17
    18:17
**submit** 31:7
**submitted** 11:10
    12:13

**subpoena** 2:20 3:2
**subpoenas** 38:25
**subsequent** 15:12
    31:6
**subtract** 21:6
**sues** 16:23
**sufficient** 9:22
**suggested** 31:6
**suggesting** 35:8
**suggestion** 25:11
    25:12
**suggestions** 31:7
**Suite** 4:6 7:4
**summary** 32:23
    35:5
**supervisor** 8:21
**support** 35:18,23
**supported** 24:21
**Supreme** 25:21
**sure** 15:15
**S-K-L-A-R-E-W**
    9:12

___
**T**
**T** 41:2,2
**take** 13:14 16:6
    23:24 26:13 28:25
    34:17 35:23 36:22
**taken** 26:22,22
**talking** 33:14 36:5
**tax** 5:2 31:24 32:2
    32:4 35:14 37:18
    37:20,25 38:1
**taxes** 37:23
**taxpayers** 37:24
**taxpayer's** 37:23
**telephone** 26:7
**Telephonically** 5:9
**tell** 19:23 31:3 32:4
    34:21 35:13,14
**term** 12:12,16 16:2
    16:17
**terminate** 34:8
**terms** 10:21 12:5,9
**Terrace** 3:5 6:19
    8:5
**testimony** 21:23

**thank** 9:14 12:25
    13:1 14:18,23
    18:11,19 19:5
    25:3,4 28:21 29:6
    30:2 34:12 38:10
    38:13
**Thanksgiving**
    13:20 18:23
**thing** 17:18 18:7
    21:11 28:10
**things** 13:5,14
    14:10 18:24,25
    35:21 37:23
**think** 11:19 12:19
    14:8 15:17,21
    17:8,8,9,18 21:15
    24:7 28:6,13,20
    29:13,25
**thought** 17:12,13
**threat** 34:22
**three** 21:1,4,7,8
    23:5 24:14,16
    36:6
**time** 9:22 10:16
    11:23 13:21,24
    14:19 19:16,23,24
    20:13 22:2 23:2
    27:23 33:20 35:7
    36:9 38:21
**times** 21:15 27:19
    28:5 30:18
**today** 9:20 11:20
    13:24 14:15 17:3
    17:22 18:13,14
    19:4 20:16 24:23
    38:21
**told** 37:22
**tolerate** 34:24
**tossing** 30:1
**totally** 14:1,1 31:2
    31:5
**Transcribed** 3:25
**transcriber** 41:4,10
**transcript** 41:5
**transfer** 31:14 37:7
**transferred** 21:25
    36:9,9,11

**transfers** 2:13 38:3
**trial** 25:18 26:6,15
    26:17 28:7,7
**tried** 31:5
**trust** 2:14 21:25
    22:7 24:4,6,11,12
    31:15 34:1,3,10
    36:12,13
**trustee** 2:15 5:13
    6:2 8:13,14,18
    10:10,11 11:5
    12:3,3,8,8,17
    13:15 14:14,16
    15:14 16:1,1,10
    16:11,14,23 17:19
    18:6 19:13 20:11
    20:16,18,20,25
    21:3,5,7 22:10,12
    23:17,21 24:9,14
    24:17,21 25:1
    26:1,1,1 27:9,13
    27:19 28:1 29:13
    29:24 31:11 35:18
    35:20,23 36:1,15
    36:16,21 37:16
**trustee's** 12:14
    15:3 23:8 29:10
    31:18 37:6,8
**try** 9:7 19:6 24:15
    33:19
**trying** 11:13,18
    20:11 25:1 30:20
    34:13 35:8 38:6
    38:11
**turned** 31:11,11
**turns** 24:15
**two** 10:15 13:15
    18:13 21:5,6,7
    29:25 33:16 37:24
**type** 13:25
**typed** 41:13

___
**U**
**Uh-huh** 17:11
**umbrage** 34:17
**understand** 11:15
    16:10 18:5,9 20:2

33:9 36:6
**understanding**
    15:16,20 35:13
    37:4
**understood** 17:3
    19:10
**undervalued** 23:3
**undid** 20:24
**undo** 28:17
**undoing** 29:20
**undone** 21:21
    27:13
**UNIDENTIFIED**
    25:5
**United** 1:2,14 5:1
    6:1,2 8:17,20 12:3
    12:3,8,14 15:20
    29:10,13 30:5,8
    31:11 34:5,10
    35:21 37:11
**unwind** 27:11
**unwound** 27:2,3
**upheld** 24:11
**use** 36:13
**uses** 36:14
**usual** 35:15
**U.S** 1:23 10:10
    12:17 15:2 16:1
    27:9,19 31:22,25
    32:1,4,7 35:21
    37:5,8,16,17

___
**V**
**v** 38:16
**vacated** 22:12,22
**valuable** 24:12
**valuation** 37:2
**value** 23:9,11 28:17
**values** 23:1,6 36:9
    36:25 37:1,7
**view** 34:13,22
**viewed** 27:12
**viewpoint** 13:12,12
**vs** 32:18

___
**W**
**wait** 35:9

waited 10:24
waive 16:20 29:18
waived 15:6
want 9:18 10:24
  11:10 13:4,5
  14:15 24:14 25:8
  28:10
wanted 9:24 19:20
  20:9
wants 22:10 24:9
Washington 5:5
wasn't 37:7
way 10:25 11:11
  20:8 25:2 33:15
  36:5 37:2,8,14
week 18:13 19:4
  28:8
weight 11:12
Weiner 5:12,17
  8:12,12,12 13:2,3
  13:17,17,19 14:3
  14:7,18 18:14
  19:12,15,18,25
  20:4,6 25:4,7
  28:12
welcome 12:22
went 28:18
weren't 37:11,14
we're 9:20 18:1,1
  31:16 35:22
we've 10:24 15:25
  25:16,17
willing 12:9
wish 12:17 22:19
  22:19 38:5
wishes 23:18
work 19:7
worth 20:25
writing 11:14
  13:18 25:19
written 16:4
wrong 21:16 22:18
  28:20 30:11
wrote 15:3

**X**

x 1:5,12 40:2

**Y**

Yantze 36:11
Yantze's 31:18,20
Yeah 30:7
year 23:4 34:19
years 10:24 30:24
  31:6 33:16 34:16
York 1:3,16 6:11
  6:21 21:22

**Z**

Z-D-A-N-O-K
  32:18
Z-D-N 32:18

**$**

$10,334.56 2:3
$141,892.50 2:7
$223,690.75 2:2
$521.39 2:8

**0**

02-17966 1:4

**1**

1G 7:4
10 38:16
10:00 1:19
10005 6:21
10174 6:11
10924 4:7
11 8:7 10:14 13:8
  38:16
11:20 39:3
11201 6:4 7:5
11242 5:15
11501 4:15
13 40:6
136,000 20:24
  36:24
16 40:9
180,000 10:5
19 14:4

**2**

2 12:16
2,000 31:23 38:1

20044 5:5
2005 31:21 38:3
2007 1:18 41:9
2008 38:21
201 4:6
210 14:4
227 5:3
259 14:3
26 5:14
26(c) 2:18 3:1
27 1:18
27th 23:7
271 1:15 6:3

**3**

3 12:12 15:3,3
  19:10
3.5 28:12,14
327 33:2
330 4:14
370 14:3
38 40:6,9

**4**

40 4:5 6:20 7:3
405 6:10
45(c) 2:19 3:3

**5**

5 41:9
500,000 36:10
546 22:15
547,000 36:10

**6**

6103 32:5
6103(h) 37:22

**7**

7 5:13 8:13,14
  10:11 11:5 12:8
  15:14 16:10,11
  18:1 19:13 38:21
7th 23:6

**9**

944 33:2