FILED
IN CLERKS OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★  SEP 29 2011  ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

ROBERT J. MUSSO, Chapter 7 Trustee, and
UNITED STATES OF AMERICA,

                          Appellants,

                -against-

BENJAMIN HIRSCH, Debtor,

                          Appellee.

-----------------------------------------------------------X

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
$\underline{08\text{-cv-}4735}$(CBA) (lead case)
08-cv-~~4523~~ (CBA)
4532

**AMON, Chief United States District Judge.**

## *INTRODUCTION*

In this consolidated bankruptcy appeal, chapter 7 trustee Robert J. Musso ("Trustee") and the United States appeal the Bankruptcy Court's partial denial of the Trustee's motion to modify the automatic stay in the underlying chapter 7 case. The Trustee's motion below sought relief from the automatic stay (a) to permit the Trustee to intervene in the long-pending state divorce proceeding between Benjamin Hirsch, the Debtor, and Hirsch's wife Nachama; and (b) to permit Nachama to propose a divorce judgment finalizing state court determinations of Benjamin's fraudulent conveyances and his use of the family trust as an "alter ego." The Bankruptcy Court granted the former request but not the latter. This Court now modifies the decision to lift the stay to permit the proposal of a judgment in the divorce action consistent with this Memorandum and Order.

## *BACKGROUND*

The acrimonious story of the Hirschs began in June of 1997 when Nachama Hirsch initiated divorce proceedings against her husband of eleven years, Benjamin Hirsch. On June 1, 2002,

1



before a judgment finalizing the division of marital property was entered in state court, Benjamin filed a chapter 11 petition. This triggered 11 U.S.C. § 362, the bankruptcy code's automatic stay provision, which prevents creditors like Nachama from pressing claims against the debtor or his property. Nearly a decade later, Benjamin and Nachama's divorce has not become final. The long and complex history leading up to this point is as follows.

## A. The Divorce Proceedings and the Decision After Trial

Nachama commenced divorce proceedings against Benjamin on June 12, 1997. Over the next several years, she amended her complaint three times, adding claims against additional defendants that are in large part the subject of this appeal. To her amended complaint, Nachama added the Hirsch Family Trust ("the HFT"), the three trustees of the HFT, and several limited liability entities ("the Entities" or "the Entity Debtors"), the ownership interests of which were owned by the HFT at the time Nachama added them to the complaint. Nachama joined these defendants in order to assert a constructive trust claim and fraudulent conveyance claims, alleging that Benjamin transferred certain marital property to the HFT and to the Entities in order to insulate the property from the coming equitable distribution.[1]

Following a lengthy trial, Justice Yancey of the Supreme Court of New York issued her *Decision After Trial.*[2] All parties—Nachama, the Trustee, the United States, and Benjamin—agree that the state court valued the Hirsch's marital assets at $4,888,223.60. *DAT* at 33. This value included all of the assets in the HFT, including the Entities the HFT owned and the assets owned by those Entities. *DAT* at 6. It is further undisputed that Justice Yancey awarded Nachama

<hr/>

[1] Among the many disputed issues in the record is whether Nachama actually alleged the fraudulent conveyance claims in her amended complaint. In the state court *Decision After Trial*, Justice Yancey states that Nachama "alleges causes of action . . . for fraudulent conveyances of marital property." *Decision After Trial*, Appellants' Br., Exh. A at 2. Benjamin has argued, to the contrary, that "the Court's determination of fraudulent conveyances was done *sua sponte.*" *Id.* at 5 n.1. The Bankruptcy Court agreed with Benjamin in his Decision and Order below. D&O at 11.

[2] Citations to the *Decision After Trial* will be preceded by "*DAT*." A copy of the *DAT* is Exhibit A of the Appellants' Brief.

2

$2,444,111.80, 50% of the marital property. *DAT* at 33. And because Nachama had requested some of her equitable share in kind, Justice Yancey provided that her award would be made up of a cash distribution of $2,111,048.20 and title to ten real properties with a combined equity of $333,063.60.[3]

Less clear are Justice Yancey's findings on Nachama's fraudulent conveyance charges. Justice Yancey clearly found that Benjamin fraudulently transferred ownership of seven real properties to the HFT or the Entities.[4] The opinion contemplates that these transfers be set aside and title transferred to Nachama—that is, the real properties fraudulently transferred by Benjamin were seven of the ten real properties Nachama was to receive as part of her equitable distribution. Nachama has argued, and the Appellants take up the cause here, that Justice Yancey also found (a) fraudulent transfers to the HFT of ownership shares in the Entities; (b) fraudulent transfers to the HFT of the proceeds of the foreclosure on a mortgage owned by Chatsworth Assets, Inc., totaling $472,487 in cash (after some $75,000 apparently used for non-fraudulent purposes is subtracted); and (c) that the HFT was Benjamin's alter ego. *See* Appellants' Br. at 4, 9. Benjamin vigorously disputes that these fraudulent conveyances were found. Appellee's Br. at 11-13. Unfortunately, what precisely the *Decision After Trial* decided has never been resolved, in part because Benjamin declared bankruptcy before it was reduced to an appealable judgment.

---

[3] The ten properties awarded to Nachama were 1450 Ocean Ave.; 2115 Ave. I; 941 E. 27th St.; 2098 E. 7th St.; 945 E. 27th St.; 2265 Gerritsen Ave.; 900-902 Coney Island Ave.; Undeveloped Property on Levine Rd., Loch Sheldrake, NY; a country home in Whitehouse Estates; and 1350 Ocean Parkway Co-op, Apt. 1F. Benjamin was awarded the High Spruce Apartments in Newark, NJ. These eleven real properties, their various agreed upon and disputed encumbrances, and their estimated equity at the time of the *Decision After Trial* are set out in the *DAT* at 29. A final property, 2113 Ave. I, was ordered to be sold to satisfy a portion of the Hirsch's substantial debt to the IRS. *DAT* at 25.

[4] The seven fraudulently transferred properties are 2098 E. 7th St.; 945 E. 27th St.; 2265 Gerritsen Ave.; 900-902 Coney Island Ave.; Undeveloped Property on Levine Rd., Loch Sheldrake, NY; a country home in Whitehouse Estates; and 1350 Ocean Parkway Co-op, Apt. 1F

3

## B. The Chapter 11 Proceedings

Benjamin and the Entities filed separate chapter 11 petitions on June 21, 2002. The Entities' cases were consolidated into one proceeding, *In re Coney Island Land Company, et al* ("the *CIL* bankruptcy"), 02-bk-17969, and Hirsch remained an individual debtor in his own chapter 11 suit, *In re Benjamin Hirsch*, 02-bk-17966.[5] The HFT was not a debtor in either case. After the filings, Nachama attempted to settle a final judgment on Benjamin in state court. This judgment purported to make final the $2,111,048.20 cash distribution and to transfer title in the ten real properties to Nachama. Benjamin did not offer a counter-settlement, maintaining that Nachama was precluded by the bankruptcy code's automatic stay, 11 U.S.C. § 362. Justice Yancey entered Nachama's judgment.[6]

### *The* CIL *Bankruptcy*

Armed with her state court judgment, Nachama brought an adversary proceeding against the Entities in bankruptcy court, *Hirsch v. CIL*, 02-ap-1651. She argued that the ten real properties awarded to her in the *Decision After Trial* belonged to her, not the *CIL* bankruptcy estate. With the exception of two properties to which Nachama had held title all along, the Bankruptcy Court disagreed. *D&O*, 02-ap-1651, DE 14 (Apr. 3, 2003).[7] Because the marital judgment was not final at the time of filing, the Bankruptcy Court concluded that the assets held by the Entities—including the seven fraudulently transferred properties—had entered the Entities' bankruptcy estate. Nachama could keep the two properties to which she held title, but her divorce judgment was void because it was "an act to obtain possession of property of the estate," 11 U.S.C.

[5] The Honorable Dennis Milton presided over both cases until he passed away on May 21, 2010. Benjamin's bankruptcy case is now assigned to the Honorable Joel Rosenthal.

[6] Justice Yancey has since retired.

[7] For convenience, this Memorandum will use "D&O" in citations to past Decisions and Orders of the Bankruptcy Court and "M&O" in citations to past Memoranda and Orders of this Court. "DE," standing for "Docket Entry," denotes the number on the docket sheet of the given case at which the cited document can be found.

§ 362(a)(3), in violation of the automatic stay. This Court affirmed. *M&O, Hirsch v. CIL*, 03-cv-3128, DE 25 (Dec. 13, 2004).

The Bankruptcy Court ruled a year later that she had no claim against the Entities' estate. *D&O, In re CIL*, DE 199 (Mar. 31, 2004). The Bankruptcy Court reasoned that although the state court had ruled that she was entitled to the seven properties Benjamin had fraudulently conveyed, the remedy contemplated by the *Decision After Trial* was that the transfers be set aside, that title revert to Benjamin, and that title be transferred to Nachama as part and parcel of her equitable distribution claim against Benjamin. She therefore did not have a direct claim against the Entities. Again, this Court affirmed. *M&O, Hirsch v. CIL*, 04-cv-2282, DE 14 (Dec. 14, 2004).

On September 24, 2004, the Entities filed their Second Amended Chapter 11 Plan. The plan purported to require full repayment of all claims. Under the plan, the Entities apparently agreed to pay Benjamin $136,165.74, though neither the plan itself nor the Order confirming it reflects this. The plan also explicitly provided that all ownership interests in the Entities would remain with the HFT. Nachama objected to the plan on several grounds, most significantly that the "[t]he Plan provides several provisions which, in their aggregate, purport to provide the Debtors and the [Hirsch Family] Trust with certain benefits akin to a release of claims." *Objections to Confirmation, In re CIL*, DE 280, at 6-7 (Dec. 13, 2004). The Entities replied that (a) the plan required that the Entities pay all claims in full; (b) that the Entities would pay $136,164.74 to Benjamin, which would fully redress the portion of Nachama's equitable distribution held to be fraudulently transferred; (c) that "[o]ne can only wonder where Mrs. Hirsch sees the Plan calling for releases of the [Hirsch Family] Trust;" and (d) that Nachama lacked standing. Although the parties agree that the Bankruptcy Court heard Nachama's objections at a pre-confirmation hear-

5

ing, *Oral Argument Tr.* at 5-11, she was held to lack standing. The plan was confirmed and the Entities emerged from bankruptcy.

*The* Hirsch *Bankruptcy*

In the *Hirsch* bankruptcy, Nachama moved pursuant to § 362(d)(1) for relief from the automatic stay. The Bankruptcy Court agreed to modify the stay, but to allow the parties only to settle judgments finalizing the divorce and establishing Nachama's equitable distribution claim. *D&O, In re Hirsch*, 02-bk-17966, DE 145 (Feb. 18, 2004). Thus, the Bankruptcy Court lifted the stay to permit a divorce judgment formalizing Nachama's entitlement to half of the marital assets, but not to allow the actual transfer of any assets to Nachama. The Bankruptcy Court noted that it was common practice to allow parties to finalize divorce judgments so that they could be appealed. "More significantly," the Bankruptcy Court reasoned, "relief from the automatic stay would not interfere with the bankruptcy cases" because no property would be transferred from the estate. *Id.* at 8.

Nachama's proposed First Amended Judgment was found to violate the terms of the Bankruptcy Court's Order. This is because it contained two decretal paragraphs directing Benjamin to pay a distributive award to Nachama without also stipulating that any payments were subject to the jurisdiction of the Bankruptcy Court. The Second Amended Judgment solved those problems, but it also added new decretal paragraphs that the Bankruptcy Court rejected. Both paragraphs would have required transfers of property or payments from the HFT. In his Decision and Order, the Bankruptcy Court pointed out that "Mrs. Hirsch's claim against the Hirsch Family Trust is based upon the fraudulent conveyance which Justice Yancey found in the state court decision." He then relied on the Second Circuit's decision in *In re Colonial Realty*, 980 F.2d 125 (2d Cir. 1992), in finding that the judgment would represent an action "to recover a claim against

6

the debtor" in violation of § 362. *D&O, In re Hirsch*, 02-bk-17966, DE 171 (Sept. 23, 2004) (addressing the First and Second Amended Complaints).

Undeterred, Nachama submitted a Third Amended Judgment. Again, the Bankruptcy Court rejected her proposal. One paragraph that troubled the Bankruptcy Court would have transferred the entirety of the HFT's ownership interests in the Entities to Benjamin and thus effectively into Benjamin's bankruptcy estate. The other paragraph called for a reassessment of Nachama's equitable share in light of the Bankruptcy Court's ruling that Nachama would not receive the properties fraudulently transferred to the Entities. *D&O, In re Hirsch*, 02-bk-17966, DE 252 (Mar. 31, 2005). Again, the Bankruptcy Court relied on *In re Colonial Realty* to find that the proposed judgment would violate the automatic stay. It also found the judgment problematic because it (a) sought to increase Mrs. Hirsch's distributive award; (b) would interfere with the bankruptcy proceeding; and (c) was inconsistent with the *Decision After Trial*. Lastly, the Bankruptcy Court cited the Entities' payment of $136,164.74, a "figure [that] represented the equity of the properties the entity debtors owned . . . which the state court decision had determined would be transferred first to Hirsch and then to Mrs. Hirsch as part of her equitable distribution." *Id.*

Nachama appealed the Decision and Order rejecting the Third Amended Judgment. This Court agreed with the Bankruptcy Court that Nachama's proposed order would violate the automatic stay under *In re Colonial Realty*, but it was less certain that the Third Amended Judgment would violate the Bankruptcy Court's modification of the stay. In discussing this issue, the Court found that "[t]he state court decision clearly contemplated returning the shares in the Entity Debtors to Benjamin's estate . . . ." *In re Hirsch*, 05-cv-2266 DE 11 (Mar. 10, 2006). It was thus not apparent why the Third Amended Judgment was inconsistent with the *Decision After Trial*. The Court did recognize, however, the possibility that the Bankruptcy Court's holding

7

stemmed from its belief that the Entities' payment of $136,164.74 had fully unwound all fraudulent transfers in the *Decision After Trial*. Taking no position on the issue, the Court remanded for clarification.[8] *M&O, In re Hirsch*, 05-cv-2266, DE 11 (Mar. 10, 2006).

In its response on remand, the Bankruptcy Court confirmed this suspicion. It stated that, having presided over the *CIL* bankruptcy, it was "of the view that by the Entity Debtors's payment of the amount which the state had fixed as the net equity of the fraudulent conveyances, the fraudulent conveyances had been unwound and Mrs. Hirsch was not entitled to the additional relief sought . . . ." *Resp. Order on Remand, In re Hirsch*, 02-bk-17966, DE 400 (Oct. 31, 2006). This Court granted Nachama's motion to submit supplemental briefing on the Bankruptcy Court's response. The Court also granted a motion by the United States, a creditor of Benjamin's estate, to file as *amicus curiae*.

## C. The Chapter 7 Proceeding and the Decision Below

On January 7, 2007—before this Court heard oral argument on the Bankruptcy Court's response on remand—the Bankruptcy Court granted Nachama's motion to convert Benjamin's chapter 11 case to a chapter 7 case. Accordingly, Robert Musso, Esq. was appointed as Trustee for Benjamin's estate. The Trustee promptly joined in the United States' position in Nachama's appeal, asking this Court to reverse the Bankruptcy Court's decision that the Third Amended Complaint violated the stay modification. At oral argument, the Trustee and the United States asked this Court to construe Nachama's proposed Third Amended Complaint as a motion for further relief from the automatic stay. The Court declined to do so, suggesting that the Trustee and United States make such a motion before the Bankruptcy Court.

<hr>

[8] In this same Appeal, this Court found that the Bankruptcy Court had erroneously set Nachama's unsecured claim against Benjamin's estate at $2,220,558.92. The proper value of her claim was set at $2,343,707.94—her total equitable distribution of $2,444,111.80 less the equity in the two of ten real properties to which Nachama already held title.

The Trustee and the United States did indeed return to Bankruptcy Court to request that the stay be modified to permit Nachama to settle her Third Amended Judgment. *Motion to Modify*, *In re Hirsch*, 02-bk-17966, DE 470 (Nov. 1, 2007); DE 482 (Dec. 4, 2007). They also asked the Bankruptcy Court to allow it to intervene in Nachama's divorce proceeding and join in advocating her proposed judgment. The Bankruptcy Court granted the motion in part and denied it in part. With little discussion, it modified the stay to enable the Trustee to intervene in the state proceeding. It denied the motion, however, to the extent it would allow Nachama to enter a divorce judgment that sought transfer of the HFT's property. The Trustee and the United States appealed separately, and this Court consolidated those appeals.

## *DISCUSSION*

### *I. Standard of Review*

"On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. 8013. It is well-settled that "the decision of whether to lift the stay [is committed] to the discretion of the bankruptcy judge, and that [a court] may overturn a denial of a motion to lift the automatic stay only upon a showing of abuse of discretion." *In re Sonnax Industries, Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). Relief is appropriate only from "(i) a decision rest[ing] on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding or (ii) a decision that, though not necessarily the product of a legal error or a clearly erroneous factual finding, cannot be located within the range of permissible decisions." *In re Aquatic Development Group, Inc.*, 352 F.3d 671, 678 (2d Cir. 2003) (internal quotations omitted). Underlying findings of fact are reviewed for clear error, *id.*, while underlying conclusions of law are reviewed *de novo*, *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2d Cir. 1998).

9

## II.     *The Bankruptcy Court's* Decision and Order

"Pursuant to 11 U.S.C. § 362(a), the filing of a bankruptcy petition operates as an automatic stay to give a debtor a short respite from creditors' demands, during which a debtor will 'have the opportunity to develop and implement plans to right his financial affairs." *In re Bogdonavich*, 292 F.3d 104, 110 (2d Cir. 2002). Under § 362(d), however, a "party in interest" may move for relief from the stay for "cause." The initial burden rests with the movant to demonstrate cause. *Id.* at 110. If the movant makes this showing, the burden shifts to the party opposing relief, who must prove it is entitled to the protections of the stay. *In re Sonnax*, 907 F.2d at 1285.

As § 362(d)'s "cause" standard suggests, bankruptcy judges are vested with considerable discretion "in deciding whether litigation should be permitted to continue in another forum." *In re Sonnax*, 907 F.2d at 1286. The Second Circuit has recognized twelve factors to guide this discretion:

(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of the harms.

The list is non-exclusive and a court need not consider each factor in every case or give each factor the same weight.

This Court concludes that denial of the modification of the automatic stay, as that request was narrowed during oral argument, was an abuse of discretion because (a) the reasons given by the Bankruptcy Court for denying the Trustee's motion do not support that decision; (b) the

10

Trustee's view of the best interests of the estate deserves at least some weight; and (c) the *In re Sonnax* factors, which the Bankruptcy Court did not discuss, weigh in favor of granting the Trustee's motion.[9]

It should first be clarified that the Trustee at oral argument of this appeal narrowed the scope of his application for modification of the stay. The Trustee no longer seeks to relitigate the values of the seven real properties fraudulently transferred to the Entities and unwound as part of the Entities' Second Amended Plan. *See Letter to Court with Proposed State Court Judgment, Musso v. Hirsch*, 08-cv-4735, DE 19 (Mar. 12, 2010). He now asks this Court to modify the stay only so that Nachama can settle a judgment in state court finalizing issues that this Court agrees have yet to be settled. These are limited to the alleged (a) fraudulent transfers to the HFT of ownership shares in the Entities; (b) fraudulent transfers to the HFT of the proceeds of the foreclosure on the Chatsworth Assets mortgage; and (c) alter ego finding. The Court is persuaded that, under the current circumstances, the relief sought by the Trustee should be granted.

## A. *The Bankruptcy Court's Finding That It Had Already Decided That All Fraudulent Conveyances Had Been Unwound*

The Bankruptcy Court's first reason for denying the Trustee's motion was his "finding in the entity debtors' case, which the District Court affirmed, that the payments fully unwound the conveyance which the state court deemed allegedly fraudulent." *D&O* at 10. In essence, the Bankruptcy Court decided that it had already resolved any dispute over the *Decision After Trial*. And

---

[9] The Court notes that it is sympathetic to the frustration the Bankruptcy Court has experienced with this case. As the summary of these proceedings reveal, they have been marked by a degree of litigiousness uncommon in this Court's experience. This was not doubt fueled by the intense animosities generated by a failed marriage. Often, applications made to the Bankruptcy Court were needlessly repetitious and might have been more appropriately pursued through other procedural vehicles. The Trustee is obviously not responsible for this earlier litigation. Nonetheless, rather than presenting an argument based on the *In re Sonnax* factors and noting the changed posture of the case, instead he sought to undermine or rehash much of the *Hirsch* and *CIL* bankruptcies, seeming to argue only that errors were made in matters long since closed.

because it had apparently already decided that Nachama was not entitled to further redress from the HFT, it declined to let Nachama propose a judgment that contemplated this further redress.

The parties disagree on the nature of the Bankruptcy Court's ruling. Appellants argue that the Bankruptcy Court must have been applying some formal doctrine of preclusion, like collateral estoppel or law of the case. They then seek to demonstrate that neither doctrine was appropriate. For his part, Benjamin argues that the Bankruptcy Court merely relied on "history—prior determinations—which guided the Court to its conclusion that stay relief was inappropriate." Appellee's Br. at 14. The Court finds this dispute academic. The Bankruptcy Court's opinion makes it abundantly clear that it was relying on a decision it thought it had made in the *CIL* bankruptcy. Equally clear is that the Bankruptcy Court had never actually decided this, whether in the *CIL* bankruptcy or at any other time.

As such, the fundamental problem with the Bankruptcy Court's reliance on its prior rulings was that it interpreted them to hold something they did not.[10] Although it is true that a "bankruptcy court's interpretation of its own order 'warrants customary appellate deference [because] [t]he bankruptcy court was in the best position to interpret its own orders,'" *In re Casse*, 198 F.3d 327, 333 (2d Cir. 1999) (quoting *Colonial Auto Ctr. v. Tomlin*, 105 F.3d 933, 940 (4th Cir. 1997)), that deference has limits. For the reasons set forth below, the Bankruptcy Court erred in interpreting its orders as conclusively deciding an issue that was scarcely argued, let alone explicitly stated in its decisions or logically implied by its holdings.

In its decision on the Trustee's Motion, the Bankruptcy Court found that it had previously ruled that a payment of $136,164.74 made to Benjamin pursuant to the Entities' reorganization

---

[10] This is not to suggest that it would have been appropriate to apply some doctrine of preclusion in this case. To the contrary, the Court has serious doubts as to whether either collateral estoppel or law of the case would apply here. To begin with, Nachama was held to lack standing in the *CIL* proceedings. Moreover, neither the Trustee nor the United States was on notice of those proceedings. Lastly, the issue was neither properly litigated nor affirmed on appeal. Accordingly, even if the Bankruptcy Court had decided what it thought it had, the Court doubts that it would have been an appropriate basis for denying stay relief.

12

plan fully unwound the fraudulent transfers found in the *Decision After Trial*. The value $136,164.74 does not itself appear in the *Decision After Trial*, but it is derived from a table in that opinion. *DAT* at 29. The table lists the market values for each real property in the marital estate, any mortgages or liens encumbering the properties, and the properties' resulting equity values. Because the *Decision After Trial* was concerned with divvying the then-existing marital estate, the values in the table were current. That is, the values represented what Justice Yancey thought she was awarding by giving a party title to one of the properties listed therein. $136,164.74 represents the sum of the equity values in the table for the seven real properties that the *Decision After Trial* found to be fraudulently transferred.

Though the value of $136,164.74 is derived from the *Decision After Trial*, the number did not actually appear as such until well into the bankruptcy proceedings. Its first appearance was on the eve of the confirmation hearing of the Second Amended Plan in the Entities' reply to Nachama's objections to that plan. That filing identifies $136,164.74 as the value of the "Property transfer by Entity Debtors" contemplated in the *Decision After Trial* as part of Nachama's award and argues that a cash payment of that value to Benjamin would legally unwind these fraudulent transfers.[11] *Reply to the Objections to Confirmation, In re CIL*, 02-bk-17969, DE 284 (Dec. 13, 2004). The very next day, the Bankruptcy Court heard argument—including some from Nachama's attorneys—on the plan before confirming it.

One searches the record of the *CIL* bankruptcy in vain for an explicit finding that the $136,164.74 payment fully unwound all fraudulent transfers found by the *Decision After Trial*. Equally absent are premises that would lead to this conclusion, for example, that the seven real

---

[11] Recall that even though the Entities were in effect holding $136,164.74 worth of property that Justice Yancey had designated for Nachama, the Bankruptcy Court had already correctly held that Nachama did not have a direct claim against the Entities. It was therefore Benjamin who, as debtor to Nachama for property held by the Entities, was creditor to the Entities for the seven properties he had fraudulently conveyed.

13

properties constituted the entire universe of fraudulent transfers, or that regardless of what fraudulent transfers were found, the only redress called for was $136,164.74 worth of property as a component of Nachama's equitable distribution. Indeed, it would have been hard to make such findings in the day between the first appearance of the $136,164.74 value and the confirmation of the plan. The Bankruptcy Court never conducted evidentiary hearings or called for adversary briefing on the issue. In fact, it was not until an oral argument in the *Hirsch* bankruptcy, over a year later, that Benjamin's attorney, who was also counsel for the Entities, explicitly suggested that the $136,164.74 payment fully redressed the *Decision After Trial. In re Hirsch*, 02-bk-17966, DE 347 (Jan. 9, 2006).

Nor was such a finding somehow a necessary condition of confirmation of the *CIL* reorganization plan. That is, the Bankruptcy Court would not have had to resolve fraudulent transfer or alter ego claims against the HFT, which was never in bankruptcy. The most the Bankruptcy Court had to decide to confirm the Entities' chapter 11 plan was that a component of Nachama's equitable distribution claim—which would have to be paid from Benjamin's estate, but which was currently in the Entities' estate—would be satisfied by a $136,164.74 payment. As noted, the Appellants do not contest that the Bankruptcy Court must have found this, and they do not seek to overturn this finding. But this finding leaves much to be resolved.

Lastly, the Court notes that the Bankruptcy Court was wrong to state that this Court had affirmed the decision that the $136,164.74 constituted full redress for any fraudulent conveyances found in the *Decision After Trial*. To the contrary, this Court wrote in the Memorandum and Order concerning Nachama's Third Amended Judgment that "neither the state court nor the bankruptcy court has made any formal finding as to whether the fraudulent conveyances have been unwound, and it is not clear whether such a finding was implicit in either of the orders of the

14

bankruptcy court being appealed here . . . ." *M&O, In re Hirsch*, 05-cv-2266, DE 11 (Mar. 10, 2006). This Court was therefore not even aware of the Bankruptcy Court's belief that the \$136,164.74 payment fully unwound all fraudulent conveyances until the Bankruptcy Court's Response on Remand, which, like here, couched the finding as having already been made in the *CIL* bankruptcy.

Put simply, the Bankruptcy Court's orders in the *CIL* bankruptcy did not decide whether a payment of \$136,164.74 fully redressed all fraudulent transfers found in the *Decision After Trial*.[12] Its interpretation of these orders was therefore plainly mistaken. Reliance on this interpretation in denying the Trustee's motion was an error of law. *See United States v. O'Rourke*, 943 F.2d 180, 186 (2d Cir. 1991) (finding that interpretation of a court's order is a matter of law); *see also In re Scott Cable Commc'ns*, 2008 WL 4614287, at *1 (D. Conn. 2008) (suggesting that erroneous application of preclusion doctrine constitutes abuse of discretion).

## *B. Reliance on* In re Colonial Realty

The Bankruptcy Court invoked the Second Circuit's decision in *In re Colonial Realty*, 980 F.2d 125 (2d Cir. 1992), in rejecting the modification motion. It is not apparent to the Court, however, why *In re Colonial* is relevant here. *In re Colonial Realty* held that, because a creditor's claim to property fraudulently conveyed to some third party-transferee does not exist independent of the creditor's claim against the debtor-transferor, the fraudulent conveyance claim is an "action . . . to recover a claim against the debtor" under 11 U.S.C. § 362(a)(1). Such a claim is therefore subject to § 362's automatic stay. But this simply means that Nachama would require relief from the automatic stay to settle the judgment the Trustee would like her to settle. The Trustee concedes this—that is why he moved to modify the stay. *In Re Colonial Realty*

---

[12] As explained *infra* Part III, this does not foreclose the possibility that the \$136,164.74 payment *did* actually unwind any fraudulent conveyances. It merely establishes that the issue has yet to be resolved.

15

therefore does not support the Bankruptcy Court's holding that the modification sought was itself inappropriate.

## C. The Role of the Chapter 7 Trustee

The Bankruptcy Court's opinion below indicates that it viewed the Trustee's motion as yet another in a long line of Nachama's self-serving attempts to get out from under the automatic stay. Benjamin likewise argues that it makes no difference that this motion was brought not by Nachama, but by the Trustee. This contention is correct in some sense because the effect of granting this motion would be largely the same as if the Bankruptcy Court had approved Nachama's Third Amended Judgment. Appellants argue, however, that "[w]hat appellee most fundamentally overlooks here is that it is the Trustee whose motion is on appeal here because he has determined that, at this juncture, he can better serve the estate by proceeding in the state court . . . ." This Court agrees that the Bankruptcy Court should have considered this factor.

"The purpose of the automatic stay is 'to prevent a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *In re Colonial Realty*, 980 F.2d at 133 (quoting *In re Fidelity Mortgage Investors*, 550 F.2d 47, 55 (2d Cir. 1976)). Thus, "[t]he automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding." *Id.* (citing *In re AP Indus., Inc.*, 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990)). The stay therefore subordinates creditors' individual interests to the collective interests of the estate, which are represented by the Trustee, 11 U.S.C. § 323. The Trustee's duty is then to "collect and reduce to money the property of the state for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest," 11 U.S.C. § 704(a)(1).

16

The Trustee here has concluded that the estate's best interests are served by allowing Na-chama to finalize her fraudulent conveyance claims against Benjamin on behalf of the estate. Both the bankruptcy code—which allows the Trustee to succeed to the rights of a creditor—and the case law—which under some circumstances allows creditors to pursue claims on behalf of the estate, assuming the Trustee's endorsement—contemplate this possibility. *See* 11 U.S.C. § 544(b) (trustee may avoid "any transfer of an interest . . . voidable under applicable law by a creditor holding an unsecured claim"); *In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 70-71 (2d Cir. 2002) ("[W]e have extended standing to bring fraudulent conveyance claims under § 548 and 549 to additional parties such as creditors when to do so is in the best interest of the estate."); *In re Commodore Int'l, Ltd.*, 262 F.3d 96, 98 (2d Cir. 2001) (holding same in context of § 1109(b) claims for fraud, waste, and mismanagement).

The Court finds that the Trustee's endorsement of Nachama's claim weighs in favor of stay relief. A trustee's imprimatur certifies that the interests of the estate will not be prejudiced by uncoordinated action, self-interest, or incompetence. *See In re Commodore Int'l, Ltd.*, 262 F.3d at 99-100. That the Trustee wants Nachama to proceed with her proposed judgment suggests that the goals of the automatic stay—preventing a "chaotic and uncontrolled scramble" and pre-serving the debtor's estate—will not be compromised by granting the Trustee's motion. Accord-ingly, the Bankruptcy Court erred in treating the Trustee's motion as though it were no different than a motion brought by an individual creditor.

## D. *The* In re Sonnax *Factors*

As noted above, the Bankruptcy Court did not address the *In re Sonnax* factors in the Decision and Order that underlies this Appeal.[13] In light of the Trustee's own failure below to discuss *In re Sonnax*, this is not a case where it would be appropriate to invoke the rule that failure to address the factors is itself an abuse of discretion. *Cf. In re MacInnis*, 235 B.R. 255, 258 (S.D.N.Y. 1998) ("[A] finding of abuse of discretion is proper when the bankruptcy court fails to consider all relevant factors."); *In re Mazzeo*, 167 F.3d 139, 143 (2d Cir. 1999) (noting the failure to discuss the *In re Sonnax* factors in vacating stay-relief). Nonetheless, an analysis of the pertinent factors reveals that they weigh decidedly in favor of granting relief from the stay.[14]

### 1. *Whether Relief Would Result in a Partial or Complete Resolution of the Issues*

The first *In re Sonnax* factor is "whether relief would result in a partial or complete resolution of the issues." *In re Sonnax*, 907 F.2d at 1286. The Court cannot overstate the importance of reducing to judgment the *Decision After Trial*. The parties have been arguing over what Justice Yancey held for nearly a decade. Allowing them to return to state court now will generate a final, appealable resolution of these issues, which have loomed over Benjamin's bankruptcy for too long. The Court therefore finds that granting stay relief will substantially advance resolution of the bankruptcy proceedings.

---

[13] Reversal is generally not appropriate where there has been a reasoned analysis of the factors. *See In re Worldcom, Inc.*, 2006 WL 2255071, at *2 (S.D.N.Y. 2006) ("The Bankruptcy Court's decision should not be disturbed on appeal where the record shows that court considered the appropriate factors for determining whether cause for relief from the stay exists.").

[14] As noted above, not all of the *In re Sonnax* factors will be relevant in every case. *In re Mazzeo*, 167 F.3d at 143. The Court finds the following *In re Sonnax* factors unhelpful to resolving this motion: (3) whether the other proceeding involves the debtor as fiduciary; (5) whether the debtor's insurer has assumed full responsibility for defending it; (8) whether the judgment claim arising from the other action is subject to equitable subordination; and (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor. This is because they are either irrelevant or because their bearing on the merits of the motion is *de minimis*.

18

## 2. Lack of Any Connection or Interference with the Bankruptcy Case

The second *In re Sonnax* factor is "lack of any connection with or interference with the bankruptcy case." *In re Sonnax*, 907 F.2d at 1286. The divorce action and the bankruptcy proceeding are connected, but this does not necessarily mean that allowing the Trustee to intervene and Nachama to proceed in state court will interfere with the bankruptcy case. *See, e.g., In re Taub*, 438 B.R. 39, 46 (Bankr. E.D.N.Y. 2010). In denying Nachama's attempt to settle her Third Amended Judgment, the Bankruptcy Court stated that entry of the judgment "would interfere with the bankruptcy cases, on the eve of a confirmation hearing in the Hirsch case, because the Court has already determined Mrs. Hirsch's claim against Hirsch in an objection to claim proceeding." *D&O, In re Hirsh*, 02-bk-17966, DE 252 (Mar. 31, 2005). The Bankruptcy Court thus had two separate concerns. One was interference with an ongoing attempt to confirm a chapter 11 reorganization in Benjamin's bankruptcy. The other was that Nachama's proposed judgment—specifically decretal paragraph three, which contemplated a hearing to determine the amount of a supplemental award in light of the Bankruptcy Court's findings on the seven real properties—would conflict with his determination of Nachama's claim.

As to the Bankruptcy Court's first concern, circumstances have changed. The *Hirsch* bankruptcy is no longer a chapter 11 case, so there is no possibility that proceeding in state court would interfere with a proposed reorganization plan. More importantly, Benjamin, who opposes the Trustee's motion here, no longer represents the interests of the estate. The Trustee is now the exclusive representative of the estate's interests, and the Trustee has concluded that allowing Nachama to settle her judgment serves those interests. Benjamin has not offered compelling reasons why the Trustee would want to interfere with administration of the estate, nor has he explained why the Trustee's judgment is wrong.

19

This Court finds the Bankruptcy Court's second concern now moot. The Trustee has submitted to this Court a proposed judgment that no longer calls for a hearing to set a supplemental award. As explained *infra* Part III, the relief the Court grants is tailored to this proposed judgment.

Consequently, the Court does not believe that granting the Trustee's motion will interfere with the bankruptcy proceedings. To the contrary, granting the Trustee's motion will allow Benjamin and Nachama to propose competing judgments and to reduce the *Decision After Trial* to a final, appealable order. It is the lack of such an order that continues to interfere with the bankruptcy proceedings. Accordingly, the Court concludes that granting the motion would facilitate the bankruptcy proceedings, not interfere with them.

### 3. Whether a Specialized Tribunal With the Necessary Expertise Has Been Established to Hear the Cause of Action

The fourth *In re Sonnax* factor is "whether a specialized tribunal with the necessary expertise has been established to hear the cause of action." "[B]ankruptcy courts will generally defer to state courts in the interest of judicial economy and restraint and out of respect for the state courts' expertise in domestic relations issues." *In re Newman*, 196 B.R. 700, 703 (Bankr. S.D.N.Y. 1996). The Court recognizes that the outstanding issues in this case are not purely matters of domestic relations. Still, the *Decision After Trial* is quintessentially a decision on issues of domestic relations. The state court is in the better position to determine how it is Justice Yancey sought to resolve those issues. Although this factor does not weigh heavily, it does offer some support for relief from the stay.

*4. Whether the Action Primarily Involves Third Parties*

The sixth *In re Sonnax* factor is "whether the action primarily involves third parties." *In re Sonnax*, 907 F.2d at 1286. The rationale underlying this factor is that where "the debtor functions only as a bailee or conduit for the goods or proceeds in question," the action is probably unconnected with the bankruptcy action and is unlikely to frustrate fair and expeditious distribution of the bankruptcy estate. *See In re Mego Int'l, Inc.*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983). Though there are important third parties in the divorce action, most notably the HFT, this is not the sort of case where an action nominally against a debtor is unconnected with creditors' interests in the bankruptcy estate. Accordingly, this factor does not favor granting the Trustee's motion.

*5. Whether Litigation in Another Forum Would Prejudice the Interests of Other Creditors*

The seventh *In re Sonnax* factor is "whether litigation in another forum would prejudice the interests of other creditors." *In re Sonnax*, 907 F.2d at 1286. This factor recognizes the possibility that "determination of claims [might] ultimately affect the interests of other creditors and property owners." *In re Cloud Nine, Ltd.*, 3 B.R. 202, 204 (Bankr. D.N.M. 1980); *see, e.g., In re Taub*, 438 B.R. 39, 48 (Bankr. E.D.N.Y. 2010) (identifying the risk that a state court judge will rule "without regard to the bankruptcy priority system or the rights of the other creditors."). Thus, it is sometimes preferable to litigate an issue in a forum in which all interested parties can participate.

It is again relevant here that the motion in this case was made by the Trustee. The Trustee has decided that allowing Nachama to pursue her claim is the best way to maximize the assets that enter the bankruptcy estate and are distributed to creditors. This Court agrees with this judgment. Should Nachama prevail in state court, her victory would not give her a superior posi-

21

tion over other creditors. In fact, it would benefit them, which is why the United States has joined the Trustee in this appeal. Granting the Trustee's motion would not prejudice the interests of other creditors.

## 6. *The Interests of Judicial Economy and the Expeditious and Economical Resolution of Litigation*

The tenth *In re Sonnax* factor considers "the interests of judicial economy and the expeditious and economical resolution of litigation." *In re Sonnax*, 907 F.2d at 1286. This factor weighs strongly in favor of granting the Trustee's motion. As the Court has repeatedly stated, a final determination of the fraudulent conveyances found by Justice Yancey and the redress she contemplated for those conveyances is long overdue. Because these issues were already litigated in state court, the shortest path to a final, appealable resolution is through state court.

Reducing the *Decision After Trial* to judgment in state court is more than a mere formality, but it is still preferable to the alternatives. If the Court denies the Trustee's motion, the Trustee would likely attempt a § 544(b) proceeding, seeking to succeed to the rights of either Nachama or the United States, with respect to whom any transfers made by Benjamin may also be fraudulent. To do so, the Trustee would have to establish equitable tolling of the statute of limitations because it elapsed when Benjamin was debtor-in-possession. If the Trustee succeeds in tolling the statute of limitations, he would still likely have to relitigate the issue against the HFT, who has never been in bankruptcy. If the Trustee could not establish equitable tolling, he would have to consider bringing a malpractice claim for Benjamin's failure to seek redress for all fraudulent conveyances on behalf of his estate. And of course, the already depleted bankruptcy estate would bear the cost of this litigation.

The Trustee has moved for relief from the stay because he believes that it is through Nachama's claim that he can most expeditiously obtain assets to which the bankruptcy estate is enti-

22

tled. The Court agrees that it would be wasteful to relitigate completely issues that have already been tried. The tenth factor therefore strongly supports relief.

## 7.  *Whether the Parties Are Ready for Trial in the Other Proceeding*

The eleventh *In re Sonnax* factor is "whether the parties are ready for trial in the other proceeding." *In re Sonnax*, 907 F.2d at 1286. The trial has, of course, already occurred. All that must happen in order for the divorce proceeding to become final is that the *Decision After Trial* be reduced to judgment. Both parties have previously proposed judgments in state court, so this Court assumes that the parties would be ready to proceed in state court if relief is granted. Accordingly, this factor cuts in favor of granting the Trustee's motion.

## 8.  *Impact of the Stay on the Parties and the Balance of the Harms*

The twelfth *In re Sonnax* factor is the "impact of the stay on the parties and the balance of the harms." *In re Sonnax*, 907 F.2d at 1286. There is no longer any chance of reorganization, or, quite frankly, any amicable ending to this litigation. But granting relief will allow the involved parties to reconcile the *Decision After Trial* and the bankruptcy proceedings. Doing so also gives the parties the best chance of avoiding future litigation. Lastly, it allows Nachama and Benjamin to obtain closure in a divorce proceeding that began over a decade ago. Declining relief from the stay, on the other hand, virtually guarantees extensive litigation in the future. Moreover, though bankruptcy generally would not deprive other creditors, like the United States, of their fraudulent conveyance claims, the further away resolution of these claims gets, the more costly they will become to resolve. The balance of harms therefore favors lifting the stay.

In sum, this Court believes that the above analysis weighs strongly in favor of granting relief from the automatic stay. Because (a) the import of the *Decision After Trial* can be resolved most expeditiously in state court; (b) resolution in state court will not prejudice the estate; and (c) the

23

Trustee, the estate's representative, believes relief from the stay to be in the estate's best interest, stay relief is warranted. The Trustee has carried his burden to demonstrate "cause." And because Benjamin's opposition is largely based on an erroneous interpretation of the Bankruptcy Court's order confirming the reorganization plan in the *CIL* bankruptcy, he has failed to demonstrate why relief should not be granted. For the reasons set forth above, the Court respectfully concludes that the Bankruptcy Court's denial of the Trustee's motion constituted an abuse of discretion.

### III. *Modification of the Automatic Stay*

"On an appeal, the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. 8013. The Court believes that little purpose would be served by remanding this case. Accordingly, it exercises its discretion to modify the Bankruptcy Court's Decision and Order. The Bankruptcy Court's partial grant of the Trustee's motion is left undisturbed; the Trustee is free to attempt to intervene in Nachama and Benjamin's divorce proceeding. The Court now modifies the Bankruptcy Court's Order to the extent it barred a proposed judgment in state court purporting to remedy (a) alleged fraudulent conveyances to the HFT of ownership shares in the Entities; (b) alleged fraudulent transfers to the HFT of the proceeds of the foreclosure on the Chatsworth Assets mortgage; and (c) the alleged alter ego finding. The automatic stay is hereby modified to permit Nachama to submit the judgment proposed to this Court by the Trustee, appended to the Trustee's letter at Docket Entry #19 and incorporated here by reference.

Before concluding, the Court pauses briefly to reiterate what it is this Memorandum and Order does not decide. This appeal is from the partial denial of a motion for relief from the automatic stay. The Court has decided that the Bankruptcy Court's denial was an abuse of discretion,

24

and that Nachama should be allowed to propose a judgment in state court. Though it was necessary to examine the underlying issues in making this determination, the Court does not decide whether Nachama's Third Amended Judgment or the modified version of that judgment proposed by the Trustee would be consistent with the *Decision After Trial*. This task now belongs to the state court, which can finally generate the appealable divorce judgment that has so long eluded the parties.

## *CONCLUSION*

For the foregoing reasons, the Court modifies the Bankruptcy Court's Decision and Order granting in part and denying in part the Trustee's motion for relief from the automatic stay. The Trustee's motion is hereby granted to the extent it seeks relief from the stay to intervene in Nachama and Benjamin's divorce proceeding and to allow Nachama to propose the judgment akin that was submitted to this Court by the Trustee. The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

Dated: Brooklyn, N.Y.
     September **29**, 2011                                s/CBA

                                                       Carol Bagley Amon
                                                       Chief United States District Judge